# COLE ET AL. *v.* RALPH.

## CERTIORARI TO THE CIRCUIT. COURT OF APPEALS FOR THE NINTH CIRCUIT

Nos. 172, 173. Argued December 8, 1919.—Decided March 15, 1920.

Where judgments of the District Court, rendered for the plaintiff on verdicts in certain adverse suits, were reversed by the Circuit Court of Appeals upon a construction and application of the mining laws without disposing of other questions presented; and, because of the general interest of the federal questions so decided, writs of certiorari were allowed to review such judgments of reversal, *held*, that this court, although it might confine itself to the matters considered by the Circuit Court of Appeals, would proceed to a complete decision, since the parties united in presenting all the questions and the. litigation had been protracted. P. 290.

Assertion. of defendant's possession, in the answer, cures omission to aver it in the complaint, in ejectment. *Id.*

To avoid a waiver, objections to defects of pleading should be timely and not deferred for advantage at the trial. *Id.*

A contract for a specified share in the proceeds of a mining location with a right to have it worked and made productive need not be recorded, in Nevada, to be good *inter partes*. P. 291.

One who has such a contractual interest is a proper party to an adverse suit brought to protect the claim, and, under the law of Nevada, may be allowed to come in as a plaintiff before the trial. *Id.*

In Nevada, an interest in a mining claim arising from a husband's location and deeded by him to his wife for a recited present money consideration is community property, where it does not appear that the consideration came from her separate property, or that the mining interest was treated as such, or that a gift to the wife was intended; and the husband may file an adverse claim against a hostile application for patent, and sue to protect the claim in his own name. P. 292.

The right of a mining locator to file an adverse claim and maintain an adverse suit is not divested by prior attachment of his interest, but his acts in that regard inure to the benefit of those who afterwards, through the attachment case, succeed to his interest; and they may be substituted as plaintiffs when such interest has fully passed to them. *Id.*

An adverse claim is not invalidated by a misnomer of a claimant due to an inadvertence, by which no one is misled or harmed. P. 293.

Absence of revenue stamps does not make a deed invalid or inadmissible in evidence under the Act of October 22, 1914. *Id.*

Rules of the mining law re-stated, respecting the rights of explorers, those of lode locators and of placer locators, significance and distinction of discovery and assessment work, and the nature and effect of adverse proceedings. Pp. 294, *et seq.*

A placer discovery will not sustain a lode location, nor a lode discovery a placer location. P. 295.

Location—the act or series of acts whereby the boundaries of the claim are marked, etc.,—confers no rights in the absence of discovery. P. 296.

Assessment work does not take the place of discovery. *Id.*

A junior placer location with earlier placer discovery prevails over a senior lode location with later lode discovery. P. 297.

Evidence reviewed and *held* sufficient to go to the jury on the question of prior discovery as between lode and placer claims, and as to whether the latter were initiated by trespass or peaceably and openly or even with acquiescence of the lode claimant. P. 299.

Evidence that placer claimants entered openly upon lode claims, where some prospecting had recently been done and where there were buildings, in charge of a watchman, which had been used by the lode claimant in operations on other claims and which the placer claimants did not appropriate or disturb; and that they made their discoveries and locations and remained several months, working and mining,—*held* enough, in the absence of any proof that they met with resistance or resorted to hostile, fraudulent acts, to warrant a jury in finding no trespass upon the actual possession of the lode claimant and acquiescence by him. *Id.*

The presence of buildings owned by a mining claimant, on his claim but not used in connection with it, *held* evidence of his actual possession of the place where they stood and, in less degree, of the remainder of the claim; but ineffectual to prevent others from entering peaceably and in good faith under the mining laws. P. 300.

An adverse placer claimant does not admit the validity of a pre-existing lode location by posting a lode location notice through a mistake, promptly corrected and not misleading. P. 303.

Generally, and specifically in Nevada, recitals of discovery, in location notices, are self-serving declarations, not evidence against adverse claimants. *Id.*

Revised Statutes, § 2332, provides that where a mining claim has been held and worked for a period equal to the time prescribed by the

local state or territorial statute of limitations for mining claims, evidence of such possession and working for such period shall be sufficient to establish a right to a patent in the absence of any adverse claim. · *Held,* that it does not dispense with, or cure the absence of, discovery. P. 305. ·

To "work" a mining claim is to do something toward making it productive, such as developing or extracting an ore body after it has been·discovered. P. 307.

249 Fed. Rep. 81, reversed. .

THE case is stated in the opinion.

*Mr. George B. Thatcher,* with whom *Mr. William C. Prentiss* was on the briefs, for petitioners.

*Mr. Samuel Herrick* and *Mr. P. G. Ellis,* with whom *Mr. Edwin W. Senior* was on the briefs, for respondent:

Among the authorities relied on in support of their claim under Rev. Stats., § 2332, and Nev. Rev. Laws, 1912, § 4951, were the following: *Belk* v. *Meagher,* 104 U. S. 279, 287; *Glacier Mountain Min. Co.* v. *Willis,* 127 U. S. 471; *Reavis* v. *Fianza,* 215 U. S. 16, 25; Costigan, Mining Law, § 153, note 52; *Buffalo Zinc Co.* v. *Crump,* 70 Arkansas, 525; *Harris* v. *Equator Min. Co.,* 8 Fed. Rep. 863; *Four Hundred Twenty Min. Co.* v. *Bullion Min. Co.,* 3 Sawy. 634; Lindley on Mines, § 865, note 3; *id.,* § 688; *Golden* v. *Murphy,* 31 Nevada, 395; *Anthony* v. *Jillson,* 83 California, 296; *Altoona Min. Co.* v. *Integral Min. Co.,* 114 California, 100;·*Upton* v. *Santa Rita Min. Co.,* 14 N. Mex. 96; *Vogel* v. *Warsing,* 146 Fed. Rep. 949; *Risch* v. *Wiseman,* 36 Oregon, 484; Snyder on Mines, §§ 353, 672; *Thomas* v. *South Butte Min. Co.,* 211 Fed. Rep. 105, 107, 108.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

These suits relate to conflicting mining locations in Nevada and are what are commonly called adverse suits.

The locations set up on one side are lode and those on the other placer, the former being designated as Salt Lake No. 3, Midas, and Evening Star and the latter as Guy Davis and Homestake. Joseph Ralph is the lode claimant and the other parties are the placer claimants.

Ralph made application at the local land office for the issue to him of a patent for the three lode claims, along with thirteen others not here in question, and in due time two adverse claims were filed in that proceeding, one based upon the Guy Davis and covering most of the ground within the Salt Lake No. 3, and the other based upon the Homestake and covering a considerable portion of the ground within the Midas and Evening Star. These suits were brought in a state court in support of the adverse claims, and Ralph, the sole defendant, caused them to be removed into the federal court, the parties being citizens of different States. Afterwards some of the original plaintiffs were eliminated and others brought in, but the citizenship remained diverse as before.

The cases were tried together to the court and a jury, the latter returning general verdicts for the plaintiffs and special verdicts finding that when the placer locations were made no lode had been discovered within the limits of any of the lode locations. Judgments for the plaintiffs were entered upon the verdicts and motions by the defendant for a new trial were overruled. Upon writs of error the Circuit Court of Appeals reversed the judgments and ordered a new trial, one judge dissenting. 249 Fed. Rep. 81. The cases are here upon writs of certiorari which were granted because the ground upon which the Circuit Court of Appeals put its decision—the construction and application of some of the mineral land laws—was deemed of general interest in the regions where those laws are operative.

The defendant does not rely entirely upon the ground of decision advanced by the Circuit Court of Appeals,

but urges at length that, if it be not well taken, the record discloses other grounds, not considered by that court, for reversing the judgments and ordering a new trial. And he further urges that, if the decision of the Circuit Court of Appeals be right, it is not sufficiently comprehensive to serve as a guide to the court and the parties upon another trial. The plaintiffs insist that the judgments in the District Court were right and should be affirmed.

In the circumstances it is open to us to deal only with the matter considered by the Circuit Court of Appeals and to remand the cases to it for any needed action upon other questions, or to proceed ourselves to a complete decision. The latter course seems the better inasmuch as counsel have united in presenting to us all questions thought to arise upon the record and the litigation already has covered a considerable period.

Criticism is made of the complaints. As presented in the state court they fully met the requirements of the local code, Rev. Laws 1912, § 5526, and there was no request after the removal into the federal court that they be recast to meet any further requirements prevailing there. Apart from the local code, each sufficiently stated a cause of action in the nature of ejectment, save as some allegations were wanting in precision and it was left uncertain whether the defendant was in possession. The latter defect was cured by an affirmative statement in the answer that the defendant was in possession. *Texas & New Orleans R. R. Co.* v. *Miller,* 221 U. S. 408, 416. If the other defects embarrassed the defendant he should have interposed a timely objection, which doubtless would have resulted in appropriate amendments. Instead, he permitted the matter to pass until the trial was in progress and then sought to obtain some advantage from it This he could not do; by his failure to make timely objection the defects had been waived. We here dispose of a related question by saying that, in our opinion, the

complaints, with the answers, put in issue the validity of the lode locations, including the requisite mineral discovery.

The defendant insists that necessary parties did not join in filing the adverse claims in the land office, that in the suits there was a misjoinder of plaintiffs and a failure to join essential plaintiffs, and that deeds showing title in some of the plaintiffs were erroneously admitted in evidence in that they were without the requisite revenue stamps. We think this insistence is untenable in all its phases.

*As respects the Guy Davis placer,* Davis and Faubert were the original locators and Faubert soon conveyed a fraction of his interest to Thatcher. These three filed the adverse claim and brought the suit, the title being in them at the time. Thereafter Faubert transferred his remaining interest to Cole, Malley and Ross, and Thatcher conveyed a fraction of his interest to Healey. Because of these transfers, and with the court's approval, Faubert was eliminated as a party and Cole, Malley, Ross and Healey came in as plaintiffs. Thus the changes in title pending the suit were followed by corresponding changes in the parties plaintiff.

At all the times mentioned the title was in a sense affected by an outstanding contract, executed by the original locators, which invested Thatcher and Forman with a right to a specified share in the output or proceeds of the claim, and possibly with a right to have it worked and thereby made productive. The contract was not recorded, but this is not material, for the contract was good between the parties and no subsequent purchaser is calling it in question. See Rev. Laws. 1912, §§ 1038–1040. Unlike Thatcher, Forman had no interest in the claim other than under this contract. He did not join in filing the adverse claim or in bringing the suit, but with the court's approval came in as a plaintiff before the trial. We think his in-

terest was not such as to make him an essential party to the adverse claim or to the suit, and yet was such as to make him an admissible party to either. Of course the acts of those having the title in filing the adverse claim and bringing the suit inured to his benefit. And had they proceeded in his absence to a judgment in their favor the same would have been true of it. But this does not prove that he could not be admitted as a plaintiff. He had an interest—a real interest—in the maintenance and protection of the claim which was the subject of the suit, and in view of the liberal provisions of the local statute, Rev. Laws 1912, §§ 4998, 5000, we think the court did not err in allowing him to come in as a plaintiff. It is not asserted that his presence was prejudicial to the defendant and we perceive no ground for thinking it could have been.

*As respects the Homestake placer,* Murray Scott and John J. Healey were the original locators and the title was still in them when the adverse claim was filed and when the suit was begun, unless there be merit in the defendant's contention that Scott's interest had then passed to others under attachment proceedings and that Healey's interest had then passed to his wife. Neither branch of the contention is, in our opinion, well grounded. The attachment proceedings, although commenced before the adverse claim was filed, did not result in a transfer of Scott's title until after the present suit was begun. The purported conveyance of Healey's interest to his wife, to which the defendant directs attention, recites that it was made upon a consideration paid in money at the time, and this is in no wise explained. There is no evidence that the consideration was paid out of any separate property of the wife, or that the conveyance was intended as a gift to her, or that she ever listed the subject of the conveyance as her separate property. In these circumstances, according to the laws of the State, the Healey interest was community property, of which the husband had the "entire

management and control" and the "absolute power of disposition." He could lease or convey it without the wife's concurrence and could sue in respect of it in his name alone.    Rev. Laws 1912, §§ 2155–2160; *Crow* v. *Van Sickle*, 6 Nevada, 146; *Lake* v. *Bender*, 18 Nevada, 361, 384–385; *Adams* v. *Baker*, 24 Nevada, 375; *Malstrom* v. *People's Ditch Co.*, 32 Nevada, 246, 260.

There was here a contract with Thatcher and Forman like that relating to the Guy Davis, and this gave them a real interest in the claim, as already explained.

The adverse claim was filed and the suit was brought by Scott, Healey, Thatcher and Forman. Afterwards, and following the consummation of the attachment proceedings, the entire interest of Scott was transferred to Cole, Malley, Ross and Davis, and by reason of this, and with the court's approval, Scott was eliminated as a party and Cole, Malley, Ross and Davis came in as plaintiffs. Thus there was no misjoinder of plaintiffs, nor any failure to join an essential party. Of course, those who succeeded to Scott's interest pending the suit were entitled to the benefit of what he had done while he held the title.

In one of the adverse claims Healey's name was given as Frank J. instead of John J., but this was a mere inadvertence, did not mislead or prejudice anyone, and rightly was disregarded by the District Court.

*As to the absence of revenue stamps*, it is true that the deeds showing title in some of the plaintiffs—they were produced in evidence over the defendant's objection— were without the stamps required by the Act of October 22, 1914, c. 331, § 22, Schedule A, 38 Stat. 762. But this neither invalidated the deeds nor made them inadmissible as evidence. The relevant provisions of that act, while otherwise following the language of earlier acts, do not contain the words of those acts which made such an instrument invalid and inadmissible as evidence while not

properly stamped. Those words were carefully omitted, as will be seen by contrasting §§ 6, 11, 12 and 13 of the Act of 1914 with §§ 7, 13, 14 and 15 of the Act of 1898, c. 448, 30 Stat. 454. From this and a comparison of the acts in other particulars it is apparent that Congress in the later act departed from its prior practice of making such instruments invalid or inadmissible as evidence while remaining unstamped and elected to rely upon other means of enforcing this stamp provision, such as the imposition of money penalties, fines and imprisonment. The decisions upon which the defendant relies arose under the earlier acts and were based upon the presence in them of what studiously was omitted from the later one.

As a preliminary to considering other contentions it will be helpful to refer to some features of the mineral land laws, Rev. Stats., § 2318, *et seq.*, about which there can be no controversy, and also to what actually was in dispute at the trial and what not in dispute.

By those laws public lands containing valuable mineral deposits are opened to exploration, occupation and acquisition for mining purposes; and as an inducement to effective exploration the discoverer is given the right to locate a substantial area embracing his discovery, to hold the same and extract the mineral without payment of rent or royalty, so long as he puts one hundred dollars' worth of labor or improvements—called assessment work—upon the claim each year, and to demand and receive a patent at a small sum per acre after he has put five hundred dollars' worth of labor or improvements upon the claim.

In advance of discovery an explorer in actual occupation and diligently searching for mineral [1] is treated as a licensee or tenant at will, and no right can be initiated or

---

[1] As to the status of an explorer or locator on oil-bearing land in advance of discovery, see the special provisions in Acts of June 25, 1910, c. 421, § 2, 36 Stat. 847, and March 2, 1911, c. 201, 36 Stat. 1015.

acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for mineral, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the location so made is valid and must be respected accordingly. *Belk* v. *Meagher*, 104 U. S. 279, 287; *Union Oil Co.* v. *Smith*, 249 U. S. 337, 346–348, and cases cited.

. A location based upon discovery gives an exclusive right of possession and enjoyment, is property in the fullest sense, is subject to sale and other forms of disposal, and so long as it is kept alive by performance of the required annual assessment work prevents any adverse location of the land. *Gwillim* v. *Donnellan*, 115 U. S. 45, 49; *Swanson* v. *Sears*, 224 U. S. 180.

While the two kinds of location—lode and placer—differ in some respects,[1] a discovery within the limits of the claim is equally essential to both. But to sustain a lode location the discovery must be of a vein or lode of rock in place bearing valuable mineral (§ 2320), and to sustain a placer location it must be of some other form of valuable mineral deposit (§ 2329), one such being scattered particles of gold found in the softer covering of the earth. A placer discovery will not sustain a lode location, nor a lode discovery a placer location. As is said by Mr. Lindley,[2] § 323, "Gold occurs in veins of rock in place, and when so found the land containing it must be appropriated under the laws applicable to lodes. It is also found in placers, and when so found the land containing it must be appropriated under the laws applicable to

---

[1] *Clipper Mining Co.* v. *Eli Mining Co.*, 194 U. S. 220, 229; *Webb* v. *American Asphaltum Co.*, 157 Fed. Rep. 203; *San Francisco Chemical Co.* v. *Duffield*, 201 Fed. Rep. 830; *Harry Lode Mining Claim*, 41 L. D. 403.

[2] Lindley on Mines, 3d ed.

placers"; and again, § 419, "It is the mode of occurrence, whether in place or not in place [meaning in rock in place], which determines the manner in which it should be located."

Location is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery, both being essential to a valid claim. *Waskey* v. *Hammer*, 223 U. S. 85, 90–91; *Beals* v. *Cone*, 27 Colorado, 473, 484, 495; *Round Mountain Mining Co.* v. *Round Mountain Sphinx Mining Co.*, 36 Nevada, 543, 560; *New England &c. Oil Co.* v. *Congdon*, 152 California, 211, 213. Nor does assessment work take the place of discovery, for the requirement relating to such work is in the nature of a condition subsequent to a perfected and valid claim and has "nothing to do with locating or holding a claim before discovery." *Union Oil Co.* v. *Smith, supra*, p. 350. In practice discovery usually precedes location, and the statute treats it as the initial act. But in the absence of an intervening right it is no objection that the usual and statutory order is reversed. In such a case the location becomes effective from the date of discovery; but in the presence of an intervening right it must remain of no effect. *Creede & Cripple Creek Mining Co.* v. *Uinta Tunnel Mining Co.*, 196 U. S. 337, 348–351, and cases cited; *Union Oil Co.* v. *Smith, supra*, p. 347.

When an application for a patent to mineral land is presented at the local land office and an adverse claim is filed in response to the notice required by the statute (§ 2325) further proceedings upon the application must be suspended to await the determination by a court of competent jurisdiction of the question whether either party, and, if so, which, has the exclusive right to the possession arising from a valid and subsisting location. A suit appropriate to the occasion must be brought by the adverse claimant, and in that suit each party is deemed an

actor and must show his own title, for the suit is "in aid of the land department." If neither establishes the requisite title the judgment must so declare. Rev. Stats., § 2326; Act March 3, 1881, c. 140, 21 Stat. 505; *Jackson v. Roby,* 109 U. S. 440; *Perego v. Dodge,* 163 U. S. 160, 167; *Brown v. Gurney,* 201 U. S. 184, 190; *Healey v. Rupp,* 37 Colorado, 25, 28; *Tonopah Fraction Mining Co. v. Douglass,* 123 Fed. Rep. 936, 941. If final judgment be given in favor of either party—whether the applicant for patent or the adverse claimant—he may file in the land office a certified copy of the judgment and then will be entitled, as respects the area awarded to him, to go forward with the patent proceedings and to have the judgment recognized and respected as a binding adjudication of his exclusive right to the possession. Rev. Stats., § 2326; *Richmond Mining Co. v. Rose,* 114 U. S. 576, 585; *Wolverton v. Nichols,* 119 U. S. 485, 489; *Iron Silver Mining Co. v. Campbell,* 135 U. S. 286, 299; *Last Chance Mining Co. v. Tyler Mining Co.,* 157 U. S. 683, 694; *Perego v. Dodge, supra; Clipper Mining Co. v. Eli Mining Co.,* 194 U. S. 220, 232.

The situation developed by the evidence presented and admissions made in the course of the trial was as follows: At the outset the land was public and unappropriated, and it remained such save as the locations in question or some of them may have changed its status. The lode locations were made, one in 1897 and the other two in 1907, and the placer locations in September, 1913. The title under the latter already has been sufficiently traced. That under the lode locations passed to the Glasgow & Western Exploration Company soon after they were made, and the defendant, Ralph, claims under a deed executed by that company's liquidator in 1914. The principal controversy was over the presence or absence of essential discoveries within the lode locations, it being denied on one hand and affirmed on the other that a vein or lode of rock in place bearing valuable mineral was dis-

covered in each location before the placer locations were
made. It was not controverted, but, on the contrary,
conceded, that that point of time was the important one
in the inquiry. Thus when the presiding judge indicated
his view by saying, "My idea is that you can't take ad-
vantage of any discoveries made since the placer locations;
and I don't believe there can be any dispute about that,"
counsel for the defendant responded, "No, your Honor,
there is none," and on another occasion counsel said, "We
are undoubtedly limited to proving that there was a
discovery of mineral in place on each of our lode claims
prior to the location of the placer claims." In all partic-
ulars other than discovery the regularity and perfection
of the lode locations were conceded. Closely connected
with the controversy over lode discoveries was another
over the applicability and effect of § 2332 of the Revised
Statutes, but it will be passed for the moment and sep-
arately considered later. As to the placer claims, it was
shown that they were based upon adequate discoveries
of placer gold within their limits, and counsel for the de-
fendant announced, "We don't deny this ground is of
placer character." Their boundaries were properly
marked and the requisite notices were posted and certif-
icates recorded. The only questions respecting their
validity that were presented and need present mention
were, first, whether at the time the placer locations were
made the lode locations had become valid and effective
claims, thereby precluding any adverse location of the
same ground, and next, if the lode locations had not then
become valid and effective, whether the placer locations
were initiated and made through wrongful intrusions or
trespasses upon any actual possession of the lode claimant.
The defendant, as is admitted in his brief in this court,
did not claim that any lode or vein was or should be ex-
cepted from the placer claims, but only that they were of
no effect for the reasons just indicated.

The evidence bearing upon the presence or absence of lode discoveries [1] was conflicting.  That for the plaintiffs tended persuasively to show the absence of any such discovery before the placer claims were located, while that for the defendant tended the other way.  Separately considered, some portions of the latter were persuasive, but it was not without noticeable infirmities, among them the following: The defendant testified that no ore was ever mined upon any of the lode claims, and that "there was no mineral exposed to the best of my [his] knowledge which would stand the cost of mining, transportation and reduction at a commercial profit." In the circumstances this tended to discredit the asserted discoveries; and of like tendency was his unexplained statement, referring to the claims grouped in this patent application, that "some of them have not a smell of ore, but they can be located and held on the principle of being contiguous to adjacent claims,"— an obviously mistaken view of the law,—and his further statement, referring to vein material particularly relied upon as a discovery, that he "would hate to try to mine it and ship it."

As respects the initiation and working of the placer

---

[1] The following extracts from *Chrisman* v. *Miller*, 197 U. S. 313, 322, show what constitutes an adequate discovery:

"The mere indication or presence of gold or silver is not sufficient to establish the existence of a lode. .The mineral must exist in such quantities as to justify expenditure of money for the development of the mine and the extraction of the mineral."

"Where minerals have been found and the evidence is of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine, the requirements of the statute have been met."

"The facts which are within the observation of the discoverer, and which induce him to locate, should be such as would *justify* a man of ordinary prudence, not necessarily a skilled miner, in the expenditure of his time and money in the development of the property."

claims, the plaintiffs' evidence indicated that the locators entered openly, made placer discoveries, performed the requisite acts of location, excavated several shafts in the "wash" from 35 to 57 feet in depth, ran drifts from the bottom along the bed-rock, and mined a considerable amount of placer gold; and that these acts covered a period of between two and three months. None of this was contradicted; and there was no evidence that the locators met with any resistance or resorted to any hostile, fraudulent or deceptive acts. But there was evidence of such ownership of buildings, comparatively recent prospecting, and maintenance of a watchman, on the part of the lode claimant [1] as made it a fair question whether he was in actual possession when the placer locators entered. That he was in possession of the buildings and the ground where they stood was made certain, but that he had any actual possession beyond that was reasonably debatable under the evidence.

The buildings were all on the same claim and covered only a part of it. One was a mill formerly in use but then dismantled and stripped of its machinery. All had been used in connection with mining operations upon other claims, but the operations had then been suspended. The buildings were not disturbed by the placer locators, nor was there any attempt to appropriate them. A watchman was in charge, but so far as appears he made no objection to what was done. Although a witness for the defendant and in his employ, he was not interrogated upon this point. Of course, ownership of the buildings did not in itself give the lode claimant any right in the land or prevent others from entering peaceably and in good faith to avail themselves of privileges accorded by the mineral land laws; but the presence of the buildings

---

[1] The lode claimant at that time was either the liquidator of the Glasgow & Western Exploration Company or the company itself.

and his relation to them did have a bearing upon the question of actual possession—a pronounced bearing as respects the place where the buildings stood and a lesser bearing as respects the other ground.

Even if the lode claimant was in actual possession of all, it still was a disputable question under the evidence whether there had not been such acquiescence in the acts of the placer locators in going upon the ground, making placer discoveries and marking their locations as gave them the status of lawful discoverers and locators rather than wrongful intruders or trespassers, that is to say, the status of explorers entering by permission and then making discoveries. See *Crossman* v. *Pendery*, 8 Fed. Rep. 693.

The questions of fact to which we have adverted were all submitted to the jury under a charge which was comprehensive, couched in plain terms, and in substantial accord with the legal principles hereinbefore stated. And, while the defendant criticises some portions of the charge, we think they neither included nor omitted anything of which he rightly can complain. As has been said, the jury returned general verdicts for the plaintiffs, and also special verdicts finding that no lode had been discovered within any of the lode locations before the placer ones were made.

But it is objected that the court, instead of requiring the plaintiffs to take the burden of proving the absence of essential lode discoveries, subjected the defendant to the burden of proving that there were such discoveries. This is not in accord with the record. It there appears that the plaintiffs undertook at the outset to establish the absence of any lode discovery and persisted in that course, a large, if not the larger, part of their case in chief being directed to that point. When they rested the defendant moved that the evidence produced by them "as to the absence of lodes, or the failure or inability of the witnesses to find or discover lodes, or mineral-bearing

rock in place" within the lode locations be stricken out
because not within the issues tendered by the plaintiffs'
complaints. The motion was denied and in that connec-
tion the court observed that the burden "undoubtedly"
was on the plaintiffs not only to show their own placer
discoveries, acts of location, etc., but also "that the
ground in dispute was open to location"; and the court
added, "Plaintiffs have, so far as the record discloses,
always insisted that there was no lode discovery, and that
the only discovery was of placer." There was also an
admission in the defendant's requested instructions that
the plaintiffs "in their case in chief" introduced evidence
tending to show that "the ground comprised in the lode
mining claims . . . contained no lodes, veins or
mineral-bearing rock in place, and . . . that said
lode locations were therefore invalid." And the court in
charging the jury said, "The burden is on the plaintiffs
in the first instance to show that when they went on these
claims to locate the placers the ground was open to loca-
tion, and that there were at the time no valid, subsisting
locations where their discoveries were made." It there-
fore is plain that the burden of proof was dealt with and
carried in a manner which does not admit of criticism by
the defendant.

It is objected also that the court refused to direct
verdicts for the defendant. But what has been said suf-
ficiently shows that, in our opinion, the evidence presented
several disputable questions of fact which it was the
province of the jury to determine. This was the view not
only of the judge who presided at the trial but of another
judge who in overruling the motion for a new trial said,
"I think that not only is there substantial evidence to
support the verdict, but the preponderance is upon that
side." Were we less satisfied than we are upon the point
we should hesitate to disturb the concurring conclusions
of those judges.

It is urged that the court erred in not holding that the placer claimants had admitted the validity of one of the lode locations by relocating the ground as a lode claim. A short statement of what was done will show, as we think, that it did not involve any such admission. After the placer claimants made their placer discovery a representative of theirs posted on the ground a notice stating that they had relocated it as a lode claim. The next day he substituted another notice stating that they had located it as a placer claim. The first notice did not accord with their discovery and the other did. Nothing was done or claimed under the first and all the subsequent steps were in accord with the other. Evidently the first was posted by mistake and the other as the true notice. No one was misled by the mistake and it was promptly corrected. In these circumstances, the first notice was of no effect and no admission could be predicated of it. *Zeiger* v. *Dowdy*, 13 Arizona, 331.

The further objection is made that no probative force was given to recitals of discovery in the recorded notices of location of the lode claims. The notices were admitted in evidence and no instruction was asked or given respecting the recitals. In one nothing is said about discovery, and what is said in the other two is meager. But, passing this, the objection is not tenable. The general rule is that such recitals are mere *ex parte*, self-serving declarations on the part of the locators, and not evidence of discovery. *Creede & Cripple Creek Mining Co.* v. *Uinta Tunnel Mining Co.*, 196 U. S. 337, 352; Lindley on Mines, 3d ed., § 392; *Mutchmor* v. *McCarty*, 149 California, 603, 607; *Strepey* v. *Stark*, 7 Colorado, 614, 619; *Magruder* v. *Oregon & California R. R. Co.*, 28 L. D. 174. This rule is recognized and applied in Nevada. *Fox* v. *Myers*, 29 Nevada, 169, 186; *Round Mountain Mining Co.* v. *Round Mountain Sphinx Mining Co.*, 36 Nevada, 543, 560.

Complaint is made because the defendant was not per-

mitted on the cross-examination of a witness for the plaintiffs to show the contents of certain assay reports. In his examination in chief the witness told of taking twelve samples from openings made by the lode claimant in the lode locations and of having the samples assayed. Seven of the assay reports were produced at the plaintiffs' request and put in evidence. They attributed to one sample a mineral value of sixty-three cents per ton and to the other six only a trace of mineral. In cross-examining the witness the defendant called for the remaining reports or their contents, but the plaintiffs objected and the objection was sustained. In other respects the cross-examination proceeded without restriction and included a full interrogation of the witness about the points from which each of the twelve samples was taken. This interrogation disclosed that one of the reports put in evidence covered a sample taken from an opening made after the location of the placer claims; and because of this that report was stricken out at the defendant's request and with the plaintiffs' consent. Near the close of the trial the court recalled its prior ruling and announced another more favorable to the defendant. The witness was then recalled and, after some further examination, three of the remaining reports were put in evidence. They attributed to one sample a mineral value of one dollar and thirty-four cents per ton and to the other two only a trace of mineral. Thus of the twelve reports all but two were produced. These two, like the one stricken out, covered samples taken from openings made after the placer claims were located. The defendant did not call for them when the witness was recalled or reserve any exception to the new ruling, and it is more than inferable from the record that he acquiesced in it. Of course, there is no merit in the present complaint.

What we have said sufficiently disposes of all questions other than that before mentioned respecting the applica-

bility and effect of § 2332 of the Revised Statutes, which provides:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining-claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim."

The defendant, conceiving that the section could be invoked in the absence of a mineral discovery, requested the court to instruct the jury that if the lode claimant held and worked the lode claims for a period of two years—the local prescriptive period for adverse possession, Rev. Laws, 1912, § 4951,—before the placer claims were initiated, such holding and working were the full equivalent of all that was essential to the validity of the lode claims, including discovery. That request was refused and others were then presented which differed from it only in that they treated discovery as essential by coupling it with holding and working. These were also refused, but no complaint is made of this,—obviously because the jury were told that under the evidence the lode claims should be regarded as valid, if only the requisite discoveries were made at any time before the placer claims were initiated. The jury, as we have seen, found as matter of fact that there was no such discovery.

The effect which must be given to § 2332 in circumstances such as are here disclosed—whether it substitutes something else in the place of discovery or cures its absence—is the matter we have to consider. That the section is a remedial provision and designed to make proof of holding and working for the prescribed period the legal equivalent of proof of acts of location, recording and transfer, and thereby to relieve against possible loss or

destruction of the usual means of establishing such acts, is attested by repeated rulings in the land department and the courts. But those rulings give no warrant for thinking that it disturbs or qualifies important provisions of the mineral land laws, such as deal with the character of the land that may be taken, the discovery upon which a claim must be founded, the area that may be included in a single claim, the citizenship of claimants, the amount that must be expended in labor or improvements to entitle the claimant to a patent, and the purchase price to be paid before the patent can be issued. Indeed, the rulings have been to the contrary.

The view entertained and applied in the land department is shown in the following excerpt from a decision by the Secretary of the Interior:

"One purpose of section 2332, . . . clearly shown in the history of the proceedings in Congress attending its consideration and passage there, was to lessen the burden of proving the location and transfers of old claims concerning which the possessory right was not controverted but the record title to which had in many instances been destroyed by fire or otherwise lost because of the insecurity and difficulty necessarily attending its preservation during the early days of mining operations. . . .

"The section was not intended as enacted, nor as now found in the Revised Statutes, to be a wholly separate and independent provision for the patenting of a mining claim. As carried forward into the Revised Statutes it relates to both lode and placer claims, and being *in pari materia* with the other sections of the Revision concerning such claims is to be construed together with them, and so, if possible, that they may all stand together, forming a harmonious body of mining law." *Barklage* v. *Russell*, 29 L. D. 401, 405-406.

The views entertained by the courts in the mining regions are shown in *Harris* v. *Equator Mining Co.*, 8

Fed. Rep. 863, 866, where the court ruled that holding and working a claim for a long period were the equivalent of necessary acts of location, but added that "this, of course, was subject to proof of a lode in the Ocean Wave ground, of which there was evidence"; in *Humphreys* v. *Idaho Gold Mines Co.*, 21 Idaho, 126, 140, where the section was held to obviate the necessity for proving the posting, etc., of a location notice, but not to dispense with proof of discovery; in *Upton* v. *Santa Rita Mining Co.*, 14 N. Mex. 96, where the court held that the section should be construed in connection with other provisions of the mineral land laws, and that it did not relieve a claimant coming within its terms from continuing to do the assessment work required by another section; and in *Anthony* v. *Jillson*, 83 California, 296, where the section was held not to change the class who may acquire mineral lands or to dispense with proof of citizenship.

As repects discovery, the section itself indicates that no change was intended. Its words, "have held and worked their claims," presuppose a discovery; for to "work" a mining claim is to do something toward making it productive, such as developing or extracting an ore body after it has been discovered. Certainly it was not intended that a right to a patent could be founded upon nothing more than holding and prospecting, for that would subject non-mineral land to acquisition as a mining claim. Here, as the verdicts show, there was no discovery, so the working relied upon could not have been of the character contemplated by Congress.

The defendant places some reliance upon the decisions of this court in *Belk* v. *Meagher*, 104 U. S. 279, and *Reavis* v. *Fianza*, 215 U. S. 16, but neither contains any statement or suggestion that the section dispenses with a mineral discovery or cures its absence. The opinion in the first shows affirmatively that there was a discovery and that in the other shows that the controversy, although of

recent origin, related to "gold mines" which had been worked for many years.

The only real divergence of opinion respecting the section has been as to whether it is available in an adverse suit, such as these are, or is addressed merely to the land department. Some of the courts have held it available only in proceedings in the department, *McGowan* v. *Maclay*, 16 Montana, 234, and others in greater number have held it available in adverse suits. *Upton* v. *Santa Rita Mining Co.*, *supra*, and cases cited. The latter view has received the approval of this court. *Reavis* v. *Fianza*, *supra*; *Belk* v. *Meagher*, *supra*.

We conclude that the defendant was not entitled to any instruction whereby he could receive the benefit of § 2332 in the absence of a discovery, and therefore that the District Court rightly refused to give the one in question. The Circuit Court of Appeals held that the instruction should have been given, and in this we think it erred.

*Judgments of Circuit Court of Appeals reversed.*

*Judgments of District Court affirmed.*