August FULLER et al.

v.

**HIGHWAY TRUCK DRIVERS AND HELPERS LOCAL 107**, an unincorporated association, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

and

Hemingway Transport, Inc.

and

Novick Transfer Co., Inc.

Civ. A. No. 35122.

United States District Court
E. D. Pennsylvania.

Sept. 3, 1964.

See also D.C., 228 F.Supp. 287.

Edward B. Bergman, Philadelphia, Pa., for plaintiffs.

Wilderman, Markowitz & Kirschner, Richard H. Markowitz, Richard Kirschner, Philadelphia, Pa., for Highway Truck Drivers and Helpers Local 107.

**116**

KRAFT, District Judge.

The plaintiffs in this action seek damages and injunctive relief against the implementation of the decision of a joint employer-employee committee purporting to settle certain grievances in accordance with the terms of a collective bargaining contract.

On March 18, 1964, we filed an opinion and order denying plaintiffs' motion for a preliminary injunction. Presently before us is the Union defendant's motion to dismiss the complaint.

Prior to January 13, 1964, the defendants, Hemingway Transport, Inc. (Hemingway), and Novick Transfer Co., Inc. (Novick), were motor freight companies engaged in interstate commerce. Both companies maintained terminals in Philadelphia.

Both Hemingway and Novick were parties to the same multi-employer, multi-local union collective bargaining agreement in the Philadelphia area, known as the "Motor Transport Labor Relations, Inc., and Teamsters' Locals City Cartage Agreement" (Master Agreement). The Philadelphia employees of both Hemingway and Novick were represented, for the purposes of collective bargaining, by the defendant Highway Truck Drivers and Helpers, Local 107 (Local 107), affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (International).

On January 13, 1964, Novick ceased doing business as a separate concern. Its business was absorbed by Hemingway, and Novick's drivers, among whom were the plaintiffs became employees of Hemingway at its Philadelphia terminal.

Article 5, Section 1, of the contract provides:

"Section 1.—Seniority rights for employees shall prevail. Seniority shall be broken only by discharge, voluntary quit, or more than a two (2) year layoff. Any employee on the seniority list who is absent because of illness or injury shall accumulate seniority for the purpose of determining his place on the seniority list. * * * A list of employees arranged in the order of their seniority shall be posted in a conspicuous place at their place of employment and a copy to the Union. There may be (at the Union's discretion) one road driver steward and one city driver steward and, in addition, one dock steward per shift in each terminal or operation. Such stewards shall be granted superseniority for all purposes, including layoff, rehire, bidding and job preference. Any controversy over the seniority standing of any employee on the seniority list shall be submitted to the Joint Grievance Procedure. (Article 7)."

Article 5, Section 4, of the contract provides:

"Section 4.—(a) The uniform rules as to application of seniority in the case of mergers, purchases, acquisitions and sales, etc. shall be those adopted by the Central States Joint Area Committee."

The seniority rules adopted by the Central States Joint Area Committee, in relevant part, provide:

"APPLICATION OF SENIORITY RULES IN CASES OF MERGERS, ACQUISITIONS, SALES, ETC. UNDER CENTRAL STATES ROAD AND CARTAGE AGREEMENTS

"*Merger, purchase, acquisition, sale, etc.*

"1. If both carriers involved are solvent then the seniority lists of the two companies should be dovetailed so as to create a Master Seniority List based upon total years of service with either Company. This is known as dovetailing in accordance with years of seniority * * *

"8. The parties acknowledge that specific situations may arise which may not be covered by the above rules, or in which the parties may feel that different treatment of the problem is necessary. In such situa-

tion, as provided in Article 5, Section 1, the Employer, the Union involved, and the Central States Drivers Council may mutually agree to such disposition of the seniority problems, as in their judgment is appropriate under the circumstances. The Change of Operations Committee shall have the authority to add to or to modify these rules in specific situations presented to it."

On January 20, 1964, the Joint Area Committee held a hearing on a grievance, filed by Hemingway employees, involving the relative seniority of the original Hemingway and the former Novick truck drivers at the consolidated Hemingway terminal. Plaintiffs allege that "all three defendants [Local 107, Hemingway, Novick] breached the terms of the collective bargaining agreement," and that Local 107 breached as well "its duty of fair representation, by failing to dovetail the two seniority lists as the collective bargaining agreement specifically requires"; that "as a direct result of these breaches. * * * the decision of the Joint Area Committee was adverse to the class of plaintiffs herein, and ordered that all of Novick's drivers be placed at the foot of the seniority list in effect at Hemingway." Plaintiffs charge that Local 107 breached its duty of fair representation, owed to plaintiffs, in seven enumerated particulars, not material for present purposes.

Plaintiffs further allege, inter alia, that "Hemingway and Novick acting through their authorized representatives breached and violated the collective bargaining agreement. * * * by insisting that former Novick drivers be deprived of their seniority rights in spite of the seniority principle specifically set forth in Article 5 of the collective bargaining agreement and the appropriate Central States Rules; and by conspiring with officials of Local 107 and other teamster representatives in private and secret conferences, without the presence or knowledge of the class of plaintiffs herein, to

obtain a decision by the Joint Area Committee based upon facts not of record adverse to the seniority rights of plaintiffs."

Local 107 vigorously contends that this Court is without subject matter jurisdiction. We think that, under the allegations of this complaint, this Court has jurisdiction, and that Local 107 has confused the question of jurisdiction with the question whether the complaint states a cause of action. The complaint charges a violation of the collective bargaining agreement. Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, gives this Court jurisdiction in such cases. Whether or not the claim is well founded, is another and distinct question. As stated in Romero v. International Term Operating Co., 358 U.S. 354, at 359, 79 S.Ct. 468, at 473, 3 L.Ed.2d 368 (1959):

"The District Court dismissed petitioner's Jones Act claim for lack of jurisdiction. 'As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.' Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912. Petitioner asserts a substantial claim that the Jones Act affords him a right of recovery for the negligence of his employer. Such assertion alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights. 'A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact.' Lauritzen v. Larsen, 345 U.S. 571, 575, 73 S.Ct. 921, 924. [97 L.Ed. 1254.]"

In Roadway Express, Inc. v. General Teamsters, etc. Local 249, 330 F.2d 859

(3rd Cir. 1964, the Court stated (p. 861):

> "The complaint properly averred a cause of action under § 301 of the Act. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). Hence the District Court had jurisdiction over the claim. Whether such averments have merit or not is immaterial on the question of jurisdiction since that is determined from the face of the complaint. Hall v. Sperry Gyroscope Co., etc., 183 F.Supp. 891 (D.C.N.Y.1960)."

Local 107 contends that plaintiffs' allegations of a breach by the union of its duty of fair representation "arguably" constitute an unfair labor practice under the National Labor Relations Act, as amended, and are, therefore, within the exclusive competence of the National Labor Relations Board. San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). We think Local 107's contention cannot prevail in the particular circumstances of this case. Plaintiffs assert a violation of the collective bargaining agreement as the result of a conspiracy between the employer and officials of Local 107 and other teamster representatives "to obtain a decision by the Joint Area Committee, based upon facts not of record, adverse to the seniority rights of plaintiffs." This allegation, we think, brings the case within the holding of Humphrey v. Moore, 375 U.S. 335, at p. 344, 84 S.Ct. 363, at p. 369, 11 L.Ed.2d 370 (1964):

> "Although there are differing views on whether a violation of the duty of fair representation is an unfair labor practice under the Labor Management Relations Act, it is not necessary for us to resolve that difference here. Even if it is, or arguably may be, an unfair labor practice, the complaint here alleged that Moore's discharge would violate the contract and was therefore within the cognizance of federal and state courts, Smith v. Evening News

Assn., supra, [371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246], subject, of course, to the applicable federal law."

Indeed, the allegations in the instant action would appear to present a stronger case for the plaintiffs than Humphrey, since, in Humphrey, the complaint did not charge employer participation in the union's breach of its duty of fair representation.

We conclude, therefore, that this Court has jurisdiction of the action.

Local 107 further contends that the complaint seeks merely a review of the merits of the Joint Area Committee award, which this Court is powerless to grant.

Article 7, Section 4(b), of the contract provides:

> "Where the Joint Area Committee by majority vote settles a dispute, such decision shall be final and binding on both parties with no further appeal."

In the face of such a provision, we have no power to substitute our construction of the contract for that of the Joint Area Committee. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

However, plaintiffs' complaint is not directed merely to the Committee's interpretation of the contract. They assert that that construction was reached as the result of conspiratorial action between Local 107 and other teamster representatives on the one hand, and Hemingway and Novick on the other. The distinction lies at the base of the Humphrey decision, where the complaint alleged that the decision of a Joint Conference Committee dovetailing the seniority lists of the two companies violated Moore's rights be-

cause: (1) the Joint Committee exceeded its powers under the existing collective bargaining contract in making its decision dovetailing seniority lists, and (2) the decision of the Committee was brought about by dishonest union conduct in breach of its duty of fair representation. So far as here material, the decision held that both grounds stated a claim under § 301 of the Act.

■ We think Local 107's contention that plaintiffs have no standing to attack the decision of the Joint Area Committee, is ruled, adversely to its contention, by the decision in Humphrey v. Moore, supra.

■■ Finally, Local 107 asserts that the complaint fails to state a cause of action upon which relief can be granted. The test to be applied in determining the sufficiency of the complaint was stated by the Court of Appeals of this Circuit in Frederick Hart & Co. v. Recordgraph Corporation, 169 F.2d 580 (3rd Cir. 1948), at p. 581:

> "It is also well-settled that on a motion to dismiss the complaint must be viewed in the light most favorable to the plaintiff and that the complaint should not be dismissed unless it appears to a certainty that the plaintiff would not be entitled to relief under any state of facts which could be proved in support of his claim; further, no matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it."

■ Careful consideration of the complaint in light of Humphrey v. Moore, supra, which presented a fairly analogous situation, persuades us that the complaint states a cause upon which relief can be granted.

Accordingly, we make the following

## ORDER

Now, September 3rd, 1964, it is ordered that Local 107's motion to dismiss the complaint be, and it is, denied.