**UNITED STATES of America,**
**Plaintiff,**

v.

**PROVIDENT NATIONAL BANK, and**
Central-Penn National Bank of Phil-
adelphia, Defendants,
and
James J. Saxon, Comptroller of the
Currency, Intervenor.

**Civ. A. No. 40032.**

United States District Court
E. D. Pennsylvania.

Oct. 13, 1966.

John W. Neville, Julius J. Hollis, Jo-
seph L. Dwyer, Attys., Dept. of Justice,
Washington, D. C., Donald G. Balthis,
Atty., Dept. of Justice, Drew J. T.

O'Keefe, U. S. Atty., Philadelphia, Pa., for plaintiff.

Frederic L. Ballard, Charles I. Thompson, Jr., Tyson W. Coughlin, Matthew M. Strickler, Richard C. Bull, Philadelphia, Pa., for defendants, Ballard, Spahr, Andrews & Ingersoll, White & Williams, Philadelphia, Pa., of counsel.

Joseph J. O'Malley, Charles H. McEnerney, Philip L. Roache, Jr., Eugene J. Metzger, Office of The Comptroller of the Currency, Washington, D. C., for intervenor.

## OPINION AND ORDER

CLARY, Chief Judge.

On December 6, 1965 the Central-Penn National Bank of Philadelphia and the Provident National Bank of Philadelphia applied to the office of the Comptroller of the Currency for permission to merge under the charter of the Central-Penn National Bank and with the title of Provident National Bank. The report by the Board of Governors of the Federal Reserve System to the Comptroller of the Currency under Section 18(c) of the Federal Deposit Insurance Act on the competitive factors involved in the proposed merger dated January 7, 1966, was that "the overall effect of the proposed merger on competition would be significantly adverse." On the same day, the Attorney General of the United States reported, "There are strong reasons, therefore, for believing that the proposed merger would have an important adverse effect on competition within the Philadelphia banking market * * * the anticompetitive effects of this merger are important and considerable and there are likely to be no redeeming features." The Federal Deposit Insurance Corporation filed no comment.

On March 4, 1966 the Comptroller of the Currency approved the merger, and on March 31, 1966, filed his written decision in respect thereof. In that decision the Comptroller noted that this application to merge was the first filed by banks of significant size to be acted upon by his office since the passage of the 1966 Amendment to the Bank Merger Act. He stated, "The new law, passed by Congress to moderate the decisions of the Supreme Court in U. S. v. Philadelphia National Bank, et al., 374 U.S. 321, [83 S.Ct. 1715, 10 L.Ed. 2d 915] (1963) and U. S. v. Lexington, 376 U.S. 665, [84 S.Ct. 1033, 12 L.Ed.2d 1] (1964) recognizes that traditional antitrust concepts cannot be applied to banking without substantial modification." His findings then followed sustaining the merger.

On April 1, 1966 the present action brought by the United States of America against Provident National Bank and Central-Penn National Bank of Philadelphia, defendants, was filed to enjoin the merger. On April 7, 1966 James J. Saxon, Comptroller of the Currency, intervened and thus is a party to the action, as provided by Section 1828(c) (7) (D) of Title 12 United States Code. Since under the provisions of the aforequoted Section 1828 of Title 12 a novel situation has been brought about wherein two departments of the Executive Branch of the Government are litigating one against the other, with the approval of the Congress of the United States, it will be necessary to delineate in this Opinion to which branch of Government is being referred. Consequently, for the purposes of this Opinion, the plaintiff hereafter will be referred to as "Department of Justice" or "Justice"; the defendant Provident National Bank as "Provident"; the defendant Central-Penn National Bank of Philadelphia as "Central"; the joint defendants as "Banks"; the Comptroller of the Currency as "Comptroller" or "Intervenor", and the Bank Merger Act, Public Law 89–356, 80 Stat. 7, 64 Stat. 892, will be referred to as "BMA–66". The stated purpose of the aforesaid Act, as set forth in the slip sheet publication reads as follows:

"To establish a procedure for the review of proposed bank mergers so as to eliminate the necessity for the dissolution of merged banks, and for other purposes."

The pertinent pleadings to date which are essential to a decision on the present motions consist of a complaint filed by Justice, a joint answer filed by the Banks, the order permitting intervention of James J. Saxon, Comptroller of the Currency, answer of the Comptroller, motion of the Comptroller to dismiss, and motion of the Banks to dismiss. The basis for each of the motions to dismiss is that the complaint "fails to state a claim upon which relief can be granted."

There is no question that a law suit was started by Justice to enjoin the merger before the thirtieth calendar day after the date of approval by the agency (March 4, 1966). Thus, Justice has met the fundamental requirement of BMA–66, Title 12, Section 1828(c) (7) (A), which prohibits any litigation challenging the merger after the thirtieth calendar day following approval. Justice has met the statutory limitation of action in that regard. A reading of the complaint leaves no doubt that Justice intended to plead, and did plead, a case of antitrust violation strictly in accordance with Section 7 of the Clayton Act (15 U.S.C., Section 18) and has attempted to ignore completely BMA–66. There are too many pointed references in the complaint challenging all alleged violations of antitrust law as contravening Section 7 of the Clayton Act only. Justice bottoms its case on the decision of the Supreme Court in U. S. v. Philadelphia National Bank, et al., 374 U.S. 321, 83 S.Ct. 1715, 10 L.Ed.2d 915 (1963). It is this specific pleading of Justice charging a violation of Section 7 which is relied upon by the Banks and the intervening Comptroller in their motions to dismiss. The Banks and Comptroller insist that a Section 7 action is no longer available to Justice in a merger or consolidation of the type involved in the instant case, and that any actions must be grounded in BMA–66 and no other statute in the light of the wording of BMA–66. The Banks and Comptroller urge that since Justice has failed to ground its action in a challenge under BMA–66 within the thirty day period, and that since such failure is substantive rather than procedural, the limitations contained in BMA–66 are applicable, that the Court is thus without jurisdiction, and the action must be dismissed. In plain language they insist that Justice has deliberately sought to avoid any requirements contained in BMA–66 which deletes "line of commerce" and adds another facet to the standards governing bank mergers, i. e. if anti-competitive effects of the proposed transaction are clearly outweighed in the public interest by the probable effect of the transaction in meeting the convenience and needs of the community to be served, the agency in question is authorized to approve a proposed merger. This intransigence of Justice, they contend, is substantive, not procedural, and thus fatal to the position of Justice.

The weakness of the contentions of the Banks and of the Comptroller lies in the fact that we are now only at the notice pleading stage. The complaint specifically charges that the history of commercial banking in the four-county area of Philadelphia has been one of consolidations, mergers and acquisitions, with a heavy concentration of the business of commercial banking within a relatively few banks; that Provident controlled 9% of the total assets, 9% of the total loans, 9% of the total IPC deposits, 10% of the total IPC demand deposits, and 9% of the banking offices doing business in the four-county area; that Central-Penn, the sixth largest commercial bank in the four-county area, controlled 5% of the total assets, 5% of the total loans, 5% of the total IPC deposits, 5% of the total IPC demand deposits, and 6% of the banking offices doing business in the four-county area; that Provident is the product of seven mergers or consolidations since 1947, and Central-Penn is the product of six such mergers or consolidations since 1949; that the proposed merged bank would be the fourth largest bank in the area, controlling 14% of the total assets, 14% of the total loans, 14% of the total IPC deposits, 15% of the total IPC demand deposits, and 15% of the banking offices of 36

banks doing business in the four-county area. Also, Justice contends that after the proposed merger, the five largest banks in the area would control 78% of the total assets, 79% of the total loans, 76% of the total IPC deposits, 77% of the total IPC demand deposits, and 63% of the banking offices of 36 banks doing business in the area; that it would destroy competition between each other and other banks, and that it would substantially lessen competition or tend to create a monopoly. It also charges that competition generally in the commercial banks in the four-county area will be substantially and unreasonably lessened, and that concentration in commercial banking in the four-county area will be substantially and unreasonably increased.

It cannot be gainsaid that if Justice had seen fit to plead generally and without reference to any particular statute, instead of specifically proceeding under Section 7 of the Clayton Act, and these factors pleaded might result in a violation of antitrust laws, the Court would of necessity have to hear the case. The only question for decision then is, does the reference solely to Section 7 invalidate the cause of action filed by Justice? For reasons hereafter set forth, this Court decides that it does not.

■ The purpose of notice pleading is merely to inform opposing parties what such opposing parties have to meet and defend. Justice charges a violation of antitrust laws, despite its insistence upon Section 7. Thus, suit is brought under antitrust laws of the United States.

■ The reference to a statute as being the basic ground upon which an action is brought, even if completely incorrect, is no ground for the dismissal of an action where there is a statute in existence which would warrant a valid cause of action for which relief could be granted upon the facts as pleaded. Missouri K. & T. R. Co. v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355 (1913). This case involved a complaint based upon a state statute which had been repealed by the enactment of a federal statute not mentioned in the complaint. Mr. Justice Pitney, writing for the Court, held that the Court was presumed to be cognizant of the enactment and that the pleader was not required to refer to the federal act. He further stated that reference to the state statute no more vitiated the pleading than a reference to any other repealed statute would have done. It was only important that there were sufficient allegations to support an action under the new federal act.

■ The modern theory of notice pleading is one of even greater liberality, thus bolstering the decision reached in Missouri K. & T. Co. v. Wulf, supra. Today, the basic principle is that pleadings are no longer to be held to the rigid standards of the common law and neither absolute clarity nor absolute precision is required. United States v. Crown Zellerbach Corporation, 141 F.Supp. 118 (N.D.Ill.1956). It is enough to sustain a pleading against a motion to dismiss that a defendant is informed with reasonable particularity of a legally cognizable claim against him. If the plaintiff could recover on any state of facts, which it might prove in support of its allegations as laid, a motion to dismiss will be denied. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Melo-Sonics Corporation v. Cropp, 342 F.2d 856 (3 Cir. 1965); Fuller v. Highway Truck Drivers & Helpers Local 107, 233 F.Supp. 115 (E.D.Pa.1964); Miller v. Bargain City, U. S. A. Inc., 229 F. Supp. 33 (E.D.Pa.1964).

■ Therefore, today the legal averments of a pleading are not so important as long as there are allegations which, if proved most favorably to plaintiff, would permit recovery under the laws of the United States. If, in such a complaint, there also appears a reference to an irrelevant statute, or if no statute is mentioned, the Court need only take judicial notice of the relevant statute. As stated in Buell v. Sears, Roebuck & Co., 321 F.2d 468 (10 Cir. 1963), it is not necessary to plead what may be judicially noticed. And, it is hornbook law

that federal acts are a proper subject for judicial notice.

 There is a further principle of pleading which has been recognized in federal procedure since United States v. Morris, 10 Wheat. 246, 23 U.S. 246, 6 L. Ed. 314 (1825), that a subsequent pleading of an adversary, if not thereafter denied, may cure a defect in a prior pleading. Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 64 L.Ed. 567 (1920); Albertson v. Federal Communications System, 87 U.S.App.D.C. 39, 182 F.2d 397 (1950); Bullen v. DeBretteville, 9 Cir., 239 F.2d 824 (1956). This principle applies to substantive as well as procedural omissions.

In the first defense of their answer, defendants claim that any action lies only under BMA–66. In their second defense, the defendant Banks put into controversy the question as to whether all right of Justice to enjoin the merger is vested in BMA–66. The answer of the Comptroller likewise puts into controversy the Bank Merger Act of 1966 by its prayer for relief.

We have long passed the stage peculiar to common law pleading that a failure in form of pleading vitiates the entire proceeding. This is an important case to all and is not a private quarrel between two branches of the Executive Department. The Congress of the United States has, for the first time, permitted two co-ordinate branches of the same department of Government to litigate opposite views in a judicial proceeding, thus affording one department of the Executive Branch, aggrieved by an alleged arbitrary position of the Department of Justice, to properly present for the first time before the judicial side of the Government its contention when it is in violent disagreement with the Department of Justice. While quite novel, in view of increasing differences between departments of Government, the provision is undoubtedly necessary.

 In denying the motions to dismiss at this time, the Court does not sustain the position of Justice that it is en-titled to sue under Section 7 of the Clayton Act. The only suit open to Justice to enjoin a bank merger lies solely within the ambit of BMA–66. It is not necessary at this time to decide the question of burden of proof, whether on Justice or on the Comptroller and Banks. That will be ruled upon in later pre-trial procedures.

### ORDER

And now, to wit, this 13th day of October, 1966, for the reasons set forth in the foregoing Opinion, it is ordered, adjudged and decreed that defendants' Motion to Dismiss and intervenor's Motion to Dismiss be and they are hereby denied.