## REAVIS v. FIANZA.

### APPEAL FROM THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 16. Argued April 26, 27, 1909.—Decided November 1, 1909.

This court has jurisdiction of this case; for, even if the requisite amount is not involved, the meaning and effect of a provision of the Philippine Organic Act of July 1, 1902, c. 1369, 32 Stats. 691, is involved.

The provision of § 45 of the Organic Act of the Philippine Islands relating to title to mines by prescription refers to conditions as they were before the United States came into power and had in view the natives of the islands and intention to do them liberal justice.

Courts are justified in dealing liberally with natives of the Philippines in dealing with evidence of possession. *Cariño* v. *Insular Government*, 212 U. S. 449.

The limitation of size of mining claims in § 22 of the Philippine Organic Act applies only to claims located after the passage of that act.

Under § 28 of the Philippine Organic Act a valid location could not be made if the land was occupied by one who was already in possession before the United States came into power, and the claim of one locating under those conditions does not constitute an adverse claim under § 45 of that act.

A right to an instrument that will confer a title in a thing is a right to the thing itself, and a statutory right to apply for a patent to mining lands is a right that equity will specifically enforce.

Although, if seasonably taken, an objection to the form of remedy might be sustained, after trial on the merits it comes too late.

7 Philippine Rep. 610, affirmed.

THE facts are stated in the opinion.

*Mr. Frederic R. Coudert* and *Mr. Howard Thayer Kingsbury*, with whom *Mr. Paul Fuller* was on the brief, for appellant:

This court has jurisdiction both as the basis of the amount involved, and because the construction of a statute of the

United States (Act of July 1, 1902, § 45; 32 U. S. Stat. 703) is in question. The facts as well as the law are before the court for review. *De la Rama* v. *De la Rama*, 201 U. S. 309.

The judgment of the Court of First Instance was plainly and manifestly against the weight of evidence. The Philippine Supreme Court should have decided according to the preponderance of the evidence. Act of Feb. 25, 1907, No. 1596, Acts of Phil. Com.

Plaintiffs had no title to the mines at the time of the cession and have acquired none since. Both under Spanish law and ours, mines can be acquired in private ownership only by compliance with governmental regulations. Translation of Mining Law and Regulations, War Dep't, July, 1900; Royal Decree of May 14, 1867; *United States* v. *Castillero*, 2 Black, 1, 166. After the cession the Spanish Mining Laws continued in force until further legislation by Congress. *Strother* v. *Lucas*, 12 Pet. 410, 436. The act of March 2, 1901, 31 Stat. 910, forbade for the time being any government grant of mining rights, and thus suspended recourse to former law. Unless plaintiffs have acquired some rights of property under the act of July 1, 1902, they have none now, and are mere trespassers.

Section 45 of the act of July 1, 1902, 32 Stat. 703, is almost identical with § 2332, Rev. Stat. It confers no title, but merely prescribes what evidence shall entitle a claimant to a patent, upon compliance with requirements of § 37 and determination of any adverse claim under § 39. Plaintiffs at most have only a right to apply for a patent;—a *jus ad rem*, not a *jus in re*. *The Young Mechanic*; 2 Curt. 404; *S. C.*, Fed. Cas. No. 18,180; *The Carlos F. Roses*, 177 U. S. 655, 666; 2 Lindley on Mines, § 688; *In re Smith Brothers*, 7 Copp's L. O. 4; *Buffalo Zinc & Copper Co.* v. *Crump*, 69 S. W. Rep. 572; *Cleary* v. *Skiffich*, 28 Colorado, 362; *McCowan* v. *Maclay*, 16 Montana, 234.

Rights founded on possession must yield to a "location" under the statutes. *Horswell* v. *Ruiz*, 67 Colorado, 111;

*Kendall* v. *San Juan Mining Co.*, 144 U. S. 658. Reavis's peaceable adverse entry interrupted plaintiffs' possession and prevented them from acquiring title thereunder. *Belk* v. *Meagher*, 104 U. S. 279, 287. Plaintiffs' possession was insufficient under the Philippine statute of limitations. Phil. Code of Proc., § 41; *Hamilton* v. *South Nev. Gold & Silver Min. Co.*, 33 Fed. Rep. 562. A "location" can only be made for a territory not exceeding 1,000 feet by 1,000 feet. 32 Stat. 697, § 22.

This case is to be distinguished from *Cariño* v. *The Insular Government*, 212 U. S. 449. There the boundaries were defined; the possession was definite and exclusive, and the lands were agricultural and hence prescriptible even against the Spanish Crown. Here the plaintiffs ask the court to declare that because a particular family of Iggorrots have habitually roamed over a whole mountain-side and taken out a little loose gold, they have acquired, legal title to all the mineral wealth below the surface within whatever boundaries they *now* choose to assert. Such a ruling would prevent the development of the mineral resources of the Philippine Islands. The Iggorrots' conceptions of private property hardly included subterranean rights. The appellant asks the court to appreciate a peculiar colonial problem rather than to weigh conflicting claims as to mining boundaries.

Plaintiffs were not entitled to an injunction. Their rights were doubtful and disputed. *Lawson* v. *U. S. Mining Co.*, 207 U. S. 1; *Gwillim* v. *Donellan*, 115 U. S. 45; *Tacoma Ry. & Power Co.* v. *Pacific Traction Co.*, 155 Fed. Rep. 259. They were out of possession when suit was brought. *Lacassagne* v. *Chapuis*, 144 U. S. 119; *Whithead* v. *Shattuck*, 138 U. S. 146. They should have sued at law to recover possession. *Bago* v. *Garcia*, 5 Phil. Rep. 524; *Bishop of Cebu* v. *Mangaran*, 6 Phil. Rep. 286; *Barlin* v. *Ramirez*, 7 Phil. Rep. 41; *Black* v. *Jackson*, 177 U. S. 349; *Potts* v. *Hollen*, 177 U. S. 365.

The judgment of the trial court should have been reversed for errors in the exclusion of material evidence. There is a

presumption of harm from such exclusion. *Buckstaff* v. *Russell*, 151 U. S. 626, 637; *Crawford* v. *United States*, 212 U. S. 183, 203.

*Mr. Henry E. Davis* for appellees:

There is no force in the contention that plaintiffs had no title to the mines in controversy at the time of the cession of the Philippine Islands and have not since acquired any. The case comes under the temporary government act, especially § 45 thereof, 32 Stat. 691, 703, which *mutatis mutandis* is, with very slight changes, identical with § 2332, Rev. Stat., taken from the act of May 10, 1872, 17 Stat. 91. The scheme of these acts was clearly to recognize in the inhabitants of territory newly acquired by the United States, rights equivalent to those of location and possession, and of themselves conferring a right to a patent for mining lands, independently of compliance with requirements of laws of the former sovereignty and local laws and customs inherited therefrom, or enacted or adopted in analogy to the institutions thereof.

Rev. Stat., § 2332, provides an additional mode of acquisition of mineral land from the Government, and, where possession has continued for the prescribed period before an adverse right exists, it is equivalent to a location under the laws of Congress. *Anthony* v. *Jillson*, 83 California, 296, 302; *Altoona &c. Co.* v. *Integral &c. Co.*, 114 California, 100, 105; *Min. Co.* v. *Bullion Min. Co.*, 3 Saw. 634, 657, 658; *Harris* v. *Equator &c. Co.*, 8 Fed. Rep. 863; *Belk* v. *Meagher*, 104 U. S. 279, 287; *Lavignino* v. *Uhlig*, 26 Utah, 125.

Upon completion of a location and until patent issues, the Government holds the title in trust for the locator; and a title so acquired will be quieted on a bill in equity even against the holder of a correct paper title. *Noyes* v. *Mantle*, 127 U. S. 348, 351; *Min. Co.* v. *Bullion Min. Co.*, *ubi supra.*

In dealing with the Philippines, the United States meant to treat its inhabitants as it had treated those of our former Mexican territory, and, indeed, to put the former on an even

more favored footing. *Cariño* v. *Insular Government*, 212 U. S. 449.

Accordingly, it is beside the question whether plaintiffs have or have not acquired any title to the mines in controversy since our acquisition of the Philippines, the facts being that it is not contended that plaintiffs ever undertook to acquire formal title to the mines during the Spanish occupation; that, almost immediately upon our occupation, they were prohibited by law from acquiring such title; that they were on their way to the acquisition of such when they encountered interference by the action of the defendant; and that the object of this case was and is to free themselves from such interference.

Plaintiffs have not mistaken their forum, they have a right to the remedy sought in this action.

Section 39 of the act of July 1, 1902, 32 Stats. 701, is *mutatis mutandis*, an exact reproduction of § 2326, Rev. Stat., as amended by act of 1881, with the difference that the question of title is provided to be determined by judgment of the court instead of by verdict of a jury. Plaintiffs, instead of going through the form of applying for a patent upon the ground of compliance with § 45 of the act of July 1, 1902, elected directly to institute proceedings in equity. The propriety of this proceeding might have been raised by demurrer or apt objection in the answer, but defendant, having answered without objection of any kind to the proceeding or the jurisdiction of the court, and having converted his answer into a petition or cross-bill for affirmative defense, closed the door upon any question as to the propriety of the proceeding itself or the jurisdiction to determine the same of the tribunal in which it was instituted. 16 Cyc. Law, 117, 129, 131, and cases cited.

Any objection to the jurisdiction or proceeding comes too late in the appellate tribunal. *Perego* v. *Dodge*, 163 U. S. 160, 164, 166, 168.

The character and extent of plaintiff's possession are unimportant, it being plain that the acts of mining on the part of

the plaintiffs were as continuous as the nature of the business and the customs of the country permitted, and such as to permit them to do acts of mining of which the methods, although crude, were yet such as were practiced and customary among their people, "and produced gold." *Stephenson* v. *Wilson,* 37 Wisconsin, 482; 2 Lind. on Mines, § 688.

The description of the premises in controversy, being by name of a property well known, is sufficient. *Glazier Mining Co.* v. *Willis,* 127 U. S. 471, 480.

And the limitation of § 22 of the act of July 1, 1902, has application only to claims located after the passage of the act.

The alleged exclusion of competent and material evidence cannot be considered, as the same is not to be found in the reasons assigned for the motion for a new trial, nor in the bill of exceptions, so-called, nor in the assignments of error.

Mr. Justice Holmes delivered the opinion of the court.

This is a bill in equity brought by the appellees to restrain the appellant from setting up title to certain gold mines in the Province of Benguet, or interfering with the same, and to obtain an account of the gold heretofore taken from the mines. The trial court rendered a judgment or decree granting an injunction as prayed. Exceptions were taken on the grounds that the findings of fact were against the weight of evidence and that the judgment was against the law. The Supreme Court reëxamined the evidence and affirmed the decree below. Then the case was brought here by appeal.

The appellees make a preliminary argument against the jurisdiction of this court, while the appellant asks us to reëxamine the evidence and to reverse the decree on the facts as well as the law. We cannot accede to either of these contentions. We are of opinion that this court has jurisdiction. For if the affidavits of value should be held to apply to the whole of Reavis's claims and not to only that part of them that are in controversy here, still a statute of the United States,

namely, a section of the organic act (§ 45, concerning mining titles in the Philippines), is "involved," within the meaning of § 10 of the same act, which determines the jurisdiction of this court. Act of July 1, 1902, c. 1369, 32 Stats. 691. The meaning and effect of that section are in question, and our construction even has some bearing upon our opinion that the findings of the two courts below should not be reopened. For apart from the general rule prevailing in such cases, *De la Rama* v. *De la Rama*, 201 U. S. 303, 309, we shall refer to the law for special reasons why those findings should not be disturbed in a case like this.

The appellees are Iggorrots, and it is found that for fifty years, and probably for many more, Fianza and his ancestors have held possession of these mines. He now claims title under the Philippine Act of July 1, 1902, c. 1369, § 45, 32 Stat. 691. This section reads as follows:

"That where such person or association, they and their grantors have held and worked their claims for a period equal to the time prescribed by the statute of limitations of the Philippine Islands, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this Act, in the absence of any adverse claim; but nothing in this Act shall be deemed to impair any lien which may have attached in any way whatever prior to the issuance of a patent."

It is not disputed that this section applies to possession maintained for a sufficient time before and until the statute went into effect. See *Soper* v. *Lawrence Brothers Co.*, 201 U. S. 359. The period of prescription at that time was ten years. Code of Procedure in Civil Actions, August 7, 1901, No. 190, § 40; 1 Pub. Laws of Phil. Comm. 378, 384. Therefore, as the United States had not had the sovereignty of the Philippines for ten years, the section, notwithstanding its similarity to Rev. Stats., § 2332, must be taken to refer to the conditions as they were before the United States had come into power. Especially must it be supposed to have had in view the natives of

the islands, and to have intended to do liberal justice to them. By § 16 their occupancy of public lands is respected and made to confer rights. In dealing with an Iggorrot of the Province of Benguet it would be absurd to expect technical niceties, and the courts below were quite justified in their liberal mode of dealing with the evidence of possession and the possibly rather gradual settling of the precise boundaries of the appellees' claim. See *Cariño* v. *Insular Government*, 212 U. S. 449. At all events, they found that the appellees and their ancestors had held the claim and worked it to the exclusion of all others down to the bringing of this suit, and that the boundaries were as shown in a plan that was filed and seems to have been put in evidence before the trial came to an end.

It cannot be said that there was no evidence of the facts found, for the plaintiff Fianza testified, in terms, that his grandfather and father had owned the mines in question, and that he and the other appellees owned them in their turn, that they had all worked the mines, that no one else had claimed them, and that the appellant had interfered with his possession, and when he put up a sign had torn it down. No doubt his working of the mines was slight and superficial according to our notions, and the possession may not have been sharply asserted as it would have been with us, whether from Iggorrot habits or from the absence of legal title under Spanish law. But it sufficiently appears that the appellees' family had held the place in Iggorrot fashion, and to deny them possession in favor of Western intruders probably would be to say that the natives had no rights under the section that an American was bound to respect. Whatever vagueness there may have been in the boundaries, it is plain that the appellant attempted to locate a claim within them, and Fianza testified that the plan to which we have referred followed the boundaries that his father showed to him. It is said that the claim is larger than is allowed by § 22. But the limitation of that section applies only to claims "located after the passage of this act."

It is to be assumed then that the appellees and their ances-

tors had held possession and had worked their claims for much more than the period required by § 45, before the moment when the statute went into effect. It is to be assumed that the possession and working continued down to within two months of that moment. But the appellant says that he entered and staked his claims before that time and then was in possession of them. On this ground, as well as others that are disposed of by the findings below, he contends that there was an adverse claim within the meaning of the act. But the ground in question was not unoccupied and therefore he could not make a valid claim under § 28. See also act of March 2, 1901, c. 803, 31 Stats. 895, 910. He refiled a location in October, 1902, but he did not and could not make the required affidavit because of the prior occupation, and at that date Fianza was within the act, unless he already had been deprived of its benefits. Moreover, it is found that Fianza's possession continued down to the bringing of this suit. This is justified by the evidence and is not contradicted by the bill. The bill, to be sure, alleges that Reavis in 1900 illegally entered and deprived the appellees of their mines and that he still continues to maintain his unjust claim. But further on it alleges that in the spring of 1902 Reavis was directed by the Governor of Benguet not to molest the appellees; that he then waited in Manila, and after the promulgation of the law "again entered," set stakes and filed a notice of location. So that the bill does not mean that he was continuously in possession or that he was in possession when the law took effect. We are of opinion that there was no adverse claim that would have prevented the appellees from getting a patent under § 45. See *Belk* v. *Meagher*, 104 U. S. 279, 284. *Altoona Quicksilver Mining Co.* v. *Integral Quicksilver Mining Co.*, 114 California, 100, 105. See also *McCowan* v. *Maclay*, 16 Montana, 234, 239, 240.

It is suggested that the possession of Fianza was not under a claim of title, since he could have no title under Spanish law. But whatever may be the construction of Rev. Stats., § 2332, the corresponding § 45 of the Philippine Act cannot be taken

to adopt from the local law any other requirement as to the possession than the length of time for which it must be maintained. Otherwise, in view of the Spanish and American law before July 1, 1902, no rights could be acquired and the section would be empty words, whereas, as we have said before, another section of the act, § 16, still further shows the intention of Congress to respect native occupation of public lands.

Again it is urged that the section of itself confers no right other than to apply for a patent. But a right to an instrument that will confer a title in a thing is a right to have the thing. That is to say, it is a right of the kind that equity specifically enforces. It may or may not be true that if the objection had been taken at the outset the plaintiffs would have been turned over to another remedy and left to apply for a patent, but after a trial on the merits the objection comes too late. See *Perego* v. *Dodge,* 163 U. S. 160, 164; *Reynes* v. *Dumont,* 130 U. S. 354, 395.

Some objections were taken to the exclusion of evidence. But apart from the fact that they do not appear to have been saved in the exceptions taken to the Supreme Court, and irrespective of its admissibility, the evidence offered could not have affected the result. An inquiry of Fianza, whether he claimed the mines mentioned in the suit or those measured by the surveyor who made the plan to which we have referred, was met by the allowance of an amendment claiming according to the plan. A question to another of the plaintiffs, whether she saw any Iggorrots working for Reavis, would have brought out nothing not admitted by the bill, that Reavis did for a time intrude upon the mines in suit. Upon the whole case we are of opinion that no sufficient ground is shown for reversing the decree, and it is affirmed.

*Decree affirmed.*