## SPRINGER et al. v. SOUTHERN PAC. CO.

### No. 4388.   Decided June 29, 1926.   (248 P. 819.)

1.   MINES AND MINERALS—STATUTE ESTABLISHING RIGHT TO PATENT
     ON WORKING MINING CLAIM FOR PERIOD OF LIMITATION IS AVAIL-
     ABLE TO DEFENDANT CLAIMING ADVERSE POSSESSION OF LAND
     CLAIMED BY PLAINTIFF UNDER MINING CLAIM (REV. ST. U. S.
     § 2332 [U. S. COMP. ST. § 4631]). Rev. St. U. S. § 2332 (U. S.
     Comp. St. § 4631), providing that evidence of possession and
     working of mining claim for period of limitation provided by state
     law shall be sufficient to establish right to patent, is available to
     defendant claiming adverse possession of lands claimed by plain-
     tiff in injunction suit under mining claim.[1]

2.   MINES AND MINERALS—STATUTE ESTABLISHING RIGHT TO PATENT
     ON WORKING MINING FOR PERIOD OF LIMITATION APPLIES IN FAVOR
     OF DEFENDANT ATTEMPTING TO LOCATE LODE MINING CLAIM FOR
     SUCH PERIOD, THOUGH LODE CLAIM WAS INVALID (REV. ST. U. S.
     § 2332 [U. S. COMP. ST. § 4631]). Rev. St. U. S. § 2332 (U. S.
     Comp. St. § 4631), providing that evidence of possession and
     working of mining claim for period of limitation under state law
     shall be sufficient to establish right to patent, applies in favor
     of defendant attempting to locate lode mining claim on land
     available only for placer claims, but expending large sums in
     working claim, using only mineral existing thereon and in actual,
     open, and exclusive possession for over 20 years prior to plain-
     tiff's attempt to locate ground as a placer claim.[2]

3.   MINES AND MINERALS—INTEREST IN MINERAL LANDS CANNOT BE
     ACQUIRED BY LOCATION BY STEALTH AS AGAINST ONE IN ACTUAL
     POSSESSION AND WORKING GROUND UNDER ATTEMPTED LOCATION.
     Plaintiff cannot by making placer location surreptitiously or by
     stealth acquire any rights in mineral lands as against defendant
     in actual possession thereof and working ground under an at-
     tempted location.

---

[1] Distinguishing *Helstrom* v. *Rodes*, 30 Utah, 122, 83 P. 730.

[2] *Lavagnino* v. *Uhlig*, 26 Utah, 1, 71 Pac. 1046, 99 Am. St. Rep. 808.

Corpus Juris-Cyc. References:

[1]   Mines and Minerals 40 C. J. p. 779 n. 80.

[2]   Mines and Minerals 40 C. J. p. 780 n. 84.

[3]   Mines and Minerals 40 C. J. p. 813 n. 70.

[4]   Mines and Minerals 40 C. J. p. 780 n. 87 New.

4. Mines and Minerals—Circumstances Showing Good Faith of Parties are to be Considered in Applying Statute Establishing Right to Patent to Land Occupied and Worked as Mining Claim for Period of Limitation (Rev. St. U. S. § 2332 [U. S. Comp. St. § 4631]). In applying Rev. St. U. S. § 2332 (U. S. Comp. St. § 4631), establishing right to patent to land occupied and worked as mining claim for state period of limitation, all facts and circumstances showing good faith of parties are to be considered.

Appeal from District Court, First District, Boxelder County; *M. C. Harris, Judge.*

Action by S. R. Springer and others against the Southern Pacific Company. Judgment for defendant, and plaintiffs appeal.

Affirmed.

*Gustin & Pence,* of Salt Lake City, and *Harlan D. Heist,* of Shoshone, Idaho, for appellants.

*Bagley, Judd & Ray,* of Salt Lake City, and *William E. Colby,* of San Francisco, Cal., for respondent.

FRICK, J.

The plaintiffs, hereinafter called appellants, commenced this action in the district court of Boxelder county, Utah, to enjoin the defendant, hereinafter designated respondent, from trespassing upon certain mining claims to which appellants claim the right of possession, and for an accounting. The question respecting the accounting or damages was by agreement of the parties not considered by the court, and no further notice will be taken of that feature of the case. The controversy arises respecting the right of possession and use of certain mineral lands the legal title to which is, and is conceded by all parties to be, in the United States.

The appellants, in their complaint, alleged all the necessary facts which under the law would entitle them to pos-

session of the mining claims in question pursuant to the laws of the United States and the mining laws of the state of Utah, while the respondent in its answer averred facts which it claimed entitled it to the possession of said claims. The respondent also set up the defense of adverse possession under the laws of Utah and likewise pleaded the statutes of limitations of that state. The issues were submitted to the trial court without a jury, partly upon facts agreed to by the parties and partly upon oral and documentary evidence adduced at the hearing. In view that the court's findings of fact cover and reflect all of the stipulated facts and the oral as well as the documentary evidence, and in view that in our judgment the findings will be helpful in applying the law applicable to the case as a whole, we shall state the findings of the court in detail. Omitting all matters of inducement, the court found as follows:

"That in the years 1903 and 1904 the predecessors in interest of the Central Pacific Railway Company entered upon the land hereinafter described, which land was then unsurveyed, unappropriated, unoccupied public domain (but which if surveyed would be in township 6 north, range 9 west), belonging to the United States of America, and which was then and there subject to entry, exploration, and appropriation under the mining laws of the United States, and filed upon and located mining claims thereon; that the boundaries of said claims were marked on the ground and so indicated as to afford actual notice of the extent, boundaries, and possession thereof, and notices of such locations were posted thereon and at said time were duly filed and recorded in the office of the county recorder of Boxelder county, state of Utah, which said mining claims are more particularly described as follows:" (Describing the claims by metes and bounds.)

"That shortly thereafter said locators and each of them conveyed and assigned all their right, title, and interest in and to said land, including their right of possession thereto, and the mining claims filed and located thereon, to said Central Pacific Railway Company.

"That the defendant Southern Pacific Company is now, and ever since 1903 and 1904 has been, in possession of said claims and premises under lease from said Central Pacific Railway Company.

"That ever since 1903 and 1904, and up to and including the time of the attempted entry and location of the plaintiffs, as hereinafter referred to, the defendant Southern Pacific Company, as lessee under lease from the Central Pacific Railway Company, and the Central Pa-

cific Railway Company as such lessor, and its grantors up to the time of the conveyance to said Central Pacific Railway Company, have been in undisputed, open, notorious, exclusive, continuous, and uninterrupted possession adverse to all the world of the above-described premises, and have continuously worked, operated, and possessed the same under the mining laws of the United States and of the state of Utah, and that during all of said period no adverse claim or claims of any nature whatsoever in hostility to the claims of defendant and said Central Pacific Railway Company or the latter's grantors have been made or asserted by any one; that said actual physical possession of said claims, and each of them, was exceptionally complete and continuous during all of said period.

"That each year during all of said period the defendant and said Central Pacific Railway Company have expended and caused to be actually expended upon said ground and for the benefit of each of said claims in the way of labor and improvements far in excess of $100 or a total sum far in excess of $600 for the entire group, the total of said expenditures for said entire period on said group of claims above described being upwards if not in excess of $500,000.

"That said work actually tended to develop and benefit each claim of said group and facilitate the extraction of mineral therefrom and consisted of actual mining and quarrying operations and the removal of building stone therefrom.

"That on the respective dates on which said claims were originally taken up and claimed as aforesaid, the boundaries of each were marked on the ground by monuments consisting of posts and rock mounds so that they could be readily traced, and the possession and occupation of the defendant and said Central Pacific Railway Company was in pursuance of such staking and monumenting, and said monuments remained standing for a great portion of said period of time and for a period far exceeding the time prescribed by the statute of limitations for mining claims in the state of Utah.

"That on each of said claims there is, and was at all the dates mentioned, including the dates the original claims were initiated, so that it was readily observable to all who might go thereon, outcroppings of a valuable deposit of building stone, to wit, limestone locatable under the placer mining laws of the United States, and that this was and is the only mineral of value to be found therein, and a valid discovery of said building stone was made on and within the limits of each of said claims on the date of initiation of possession thereof by said original locators and by said Central Pacific Railway Company and by the defendant Southern Pacific Company.

"That during all the times mentioned the defendant and said Central Pacific Railway Company have continuously possessed and unin-

terruptedly worked said claims and each of them for the sole purpose and object of mining, quarrying, and removing said building stone, and have so removed during said period of time upwards, if not in excess of, 500,000 cubic yards thereof, and have utilized the same for construction purposes.

"That on or about the 28th day of January, 1924, one of the plaintiffs, to wit, F. S. Miller, acting for himself and as agent for Thomas E. Morgan, Cornelia Dodson, Gerald Miller, D. M. Dodson, J. A. McCulloch, A. J. Dodson, and Leonard Miller, early in the morning of said day, long before working hours and either before or about daylight, clandestinely and surreptitiously entered upon and invaded the actual possession of said claims of the Central Pacific Railway Company above described, or a portion thereof, which were then and there in possession of defendant under lease as aforesaid, and attempted to locate a portion thereof by embracing the same within an association placer mining location, called the 'Barney Google' placer mining location, which said claim is described as follows:" (Describing by metes and bounds.)

"That all of the above-named locators of said Barney Google placer claim were citizens of the United States of America; but the court finds that so much of said Barney Google mining claim as conflicts with the area of the mining claims of the Central Pacific Railway Company herein described, and which were held by the defendant under lease, was not located or unappropriated or unoccupied public domain for the reason that at the time of said entry thereon and attempted location thereof by plaintiffs, or at any time since date of entry, said conflicting area was not unappropriated, unoccupied public domain, but was then being held and worked, and for more than seven years prior thereto had been held, mined, and worked, by the Central Pacific Railway Company and by defendant as lessee for the purpose and in the process of mining, quarrying, removing, and using each and every year large quantities of stone therefrom, and during all of said time said Central Pacific Railway Company had paid all taxes which had been levied and assessed against said land and mining claims according to law, and that at said time large rock quarries had been opened up and developed by said Central Pacific Railway Company, and for more than 20 years prior thereto said quarries had been continuously worked and mined on said claims by defendant as lessee of said Central Pacific Railway Company.

"That the claims initiated by the grantors of the Central Pacific Railway Company, described in paragraph 1 of these findings, and possession of which has been continuously maintained for more than 20 years last past by this defendant and said Central Pacific Railway Company and the grantors of the latter, were erroneously designated

and described in the location notices posted on each, which were thereafter recorded as stated in finding 1 hereof, as lode mining claims, but that each of said locators intended to locate and claim said ground for the sole mineral deposit of value found in each, to wit, limestone valuable for building stone, and that each of said locators and their grantee, Central Pacific Railway Company, and the defendant did so possess and has since possessed and worked said claims for said stone solely and exclusively, as aforesaid."

The court found as conclusions of law that the respondent was entitled to the possession of the mining claims in dispute, and further found as a conclusion of law that the respondent was entitled to judgment quieting the title of said claims as against the claims of the appellants and each of them, in respondent, and a judgment or decree was entered in conformity with the findings of fact and conclusions of law aforesaid, from which the appeal is prosecuted by all of the plaintiffs.

While errors are assigned assailing the findings of fact and the admission of evidence, yet practically the whole argument of counsel on both sides is directed to the sole question of which one of the claimants is legally entitled to the possession of the mining claims in dispute in view of a federal statute, and as the same has been construed and applied by the federal and several of the state courts, including the Supreme Court of the United States. There is not, nor can there be, any question respecting respondent's adverse possession under the laws of the state of Utah to entitle it to hold the mining claims in question as against the appellants and as against all the world except the United States government, provided respondent may avail itself of the defense of adverse possession under the controlling facts as found by the trial court and the law applicable thereto. A mere cursory reading of the findings will, we think, disclose that the respondent went into possession of the mining claims in dispute, not as a trespasser, but under a claim of right; that it complied with the mining laws of the state of Utah and of the United States in all respects, except that it

did not make a discovery of valuable mineral in rock in place, but merely discovered mineral within the purview of the law relating to the location of placer claims. In other words, the mineral land claimed by respondent was not subject to location as lode mining claims, but was subject to location only as placer mining claims. It, however, attempted to locate the lands as lode mining claims and not as placer mining claims, and out of that fact arise the difficulties of this case.

Keeping in mind all of the facts and circumstances, this case, so far as we have been able to learn, is entirely unique, that is, there never was one just like it in its various facts and circumstances and there perhaps never will be another precisely like this one.

In order to assist the reader to better understanding of the situation of the mining claims in question, and the facts as found by the trial court, we insert at this point a condensed map or plat showing the ground in controversy:

LEGEND.

RED ——————— CENTRAL PACIFIC CO'S TRACKS
BROWN —— ·· —— CENTRAL PACIFIC CO'S RIGHT OF WAY.
PURPLE ~~~~~~ ORIGINAL CENTRAL PACIFIC CO'S CLAIMS
YELLOW —•—o—•—BARNEY GOOGLE CLAIM.

SOUTHERN PACIFIC CO.
LAKESIDE - UTAH.
SHOWING MINING CLAIMS IN
WEST QUARRY.

The boundary lines of the Barney Google claim, which covers all of the Texas and Montana claims and most of the Colorado and about one-half of the Nevada claims, is indicated by small arrows pointing in all directions.  The irregular dotted line running east and west farther north on the plat indicates where respondent commenced the blasting and breaking down of the limerock, while the dotted line running almost parallel with the one just mentioned and a little farther south indicates where the face of the workings now is.  Along the dotted line last referred to the face of the precipice is perhaps several hundred feet in height, and vast quantities of rock can now be blasted and broken down from the face at one time.  In order to construct the face, respondent was required to spend at least several hundred thousand dollars.  It is this high precipice that makes the claims valuable to respondent, since it very much lessens the cost of blasting and breaking down the limerock.  The chief value of the limerock consists in its hardness and resistance to the action of the waters of Great Salt Lake.  For any other purpose the rock is no more valuable than are millions of tons of other limerock.  The mountain in which the limerock is deposited rises to the south, which rise is covered by the Barney Google claim.  It will also be noticed that the evident purpose of locating the north boundary line of the Barney Google claim along respondent's right of way and near to its main line of track was to cut off respondent from breaking down the rock, since there is nothing in the record to indicate any other purpose, or that the appellants expect to use the limerock for any other purposes. In fact, the location of the railroad line across the northerly portion of Great Salt Lake is the only cause why this rock is of any value whatever.  Before the railroad was located across the lake, this rock, like millions upon millions of tons of similar rock, was entirely valueless, and would doubtless have remained so if the railroad had not been located across the lake.

Proceeding now to a consideration of the law, we observe that the particular statute upon which the respondent relies, apart from the Utah statute of adverse possession, constitutes section 2332 of the Rev. St. United States (U. S. Comp. St. § 4631, which reads as follows:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the state or territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter, in the absence of any adverse claim; but nothing in this chapter shall be deemed to impair any lien which may have attached in any way whatever to any mining claim or property thereto attached prior to the issuance of a patent."

Counsel for appellant (stating their contention in their own language) in their printed brief say:

"An analysis of the cases construing this section leads us to the belief that this section of the statute applies only in a case that is up for determination in the matter of an application for a patent."

In support of the foregoing statement, counsel, among other cases, cite *Cleary* v. *Skiffich*, 28 Colo. 362, 65 P. 59, 89 Am. St. Rep. 207, and *McCowan* v. *Maclay*, 16 Mont. 234, 40 P. 602. Counsel also refer to the case of *Cole* v. *Ralph*, 252 U. S. 286, 40 S. Ct. 321, 64 L. Ed. 567, as sustaining the statement just referred to. The case cited from Montana clearly supports counsel's contention, and while a statement in the opinion of the case cited from Colorado does the same, yet there is a further statement in that opinion to the effect that the question was not involved and hence it was not necessary to decide it. Upon the other hand, Cole v. Ralph, supra, does not sustain counsel's statement, as is clearly proved by a statement contained near the close of the opinion in that case which reads as follows:

"The only real divergence of opinion respecting the section has been as to whether it is available in an adverse suit, such as these are, or is addressed merely to the land department. Some of the courts have held it available only in proceedings in the department. *McCowan* v.

*Maclay,* 16 Mont. 234 [40 P. 602], and others in great number have held it available in adverse suits. *Upton* v. *Santa Rita Mining Co.* [14 N. M. 96, 89 P. 275] supra, and cases cited. The latter view has received the approval of this court. *Reavis* v. *Fianza* [215 U. S. 16, 30 S. Ct. 1, 54 L. Ed. 72] supra; *Belk* v. *Meagher* [104 U. S. 279, 26 L. Ed. 735] supra."

It requires no argument to demonstrate the rule announced in the Montana case is not only not approved but is clearly disapproved by the Supreme Court of the United States in the opinion just referred to.

Counsel, however, further insist that no one can acquire any legal right to or interest in any of the mineral-lands of the United States by merely going into and holding possession thereof, however long such possession may be continued. In support of that contention, among other cases, they cite *Sparks* v. *Pierce,* 115 U. S. 408, 6 S. Ct. 102, 29 L. Ed. 428, and *Helstrom* v. *Rodes,* 30 Utah, 122, 83 P. 730. The cases cited, as well as others to which reference need not be made here, no doubt hold that no one can acquire any legal right in or to the mineral lands of the United States by a mere naked possession of such lands, however long such possession is continued. The cases just referred to, as well as many others, however, also point out that not every possession that is not based upon a record title is necessarily only a mere naked possession. The doctrine in that respect is clearly stated in a few words by Mr. Justice Field in the case of Sparks v. Pierce, supra. In that case, after stating the facts relative to the character of the possession, Mr. Justice Field observed:

"The case presented, therefore, is that of occupants of the public lands without title, *and without any attempt having been made by them, or by any one representing them, to secure that title, resisting the enforcement of the patent of the United States, on the ground of such occupation.*" (Italics ours.)

Similar expressions are found in Helstrom v. Rodes, supra, and in other cases. In view of the facts as found by the trial court, it is manifest that we are not here dealing with a

mere naked possession without any attempt to acquire the record title. The question that presents itself, however, is this: May the respondent avail itself of the provisions of section 2332, supra? · Counsel for appellants insist that the provisions of that section have no application to a case like the one at bar, for two reasons: (1) Because the provisions of that section are available only upon applications for patents, and not in a proceeding like the one at bar; and (2) that in no event are the provisions of that section availing in a case where no proper location has been made as provided by the mining laws.

The first contention we have already disposed of contrary to counsel's contention. As to whether respondent may avail itself of the provisions of section 2332, supra, however, where, as here, the attempted lode location failed because no discovery of valuable mineral was made by discovering rock in place, as that term has always been construed and applied by the courts, is, perhaps, not without some difficulty. The record in this case leaves no room for doubt that every other legal requirement except the discovery of valuable mineral in rock in place has been met by the respondent. Neither is there any doubt that an honest attempt was made by respondent to make a lode location, and that in view that no proper discovery was made no valid or legal lode location was made. Notwithstanding that fact, however, respondent has fulfilled every other legal requirement. It expended more than a half million dollars in working and making improvements on the mining claims that it had attempted to locate as lode claims, but which unfortunately constituted placer ground instead, and should have been located as placer claims. Moreover, for more than 20 years before appellants made any attempt to locate the ground as placer ground, respondent had maintained actual and exclusive possession of its claims and made permanent and valuable improvements thereon. Then, again, respondent was in actual, open, and visible possession of the claims and was developing and

constantly using the only mineral contained therein when the appellants made their attempt to locate the ground as placer claims, of which respondent was in actual possession and was extracting mineral therefrom, all of which appellants knew, and for a long time prior to their attempted location had known.

In this connection it should also be remembered that the court found (and we think the evidence supports the finding) that the appellants "early in the morning of said day [the day the location was made], long before working hours and either before or about daylight, clandestinely and surreptitiously entered upon and invaded the actual possession of said claims * * * and attempted to locate a portion thereof by embracing the same within an association placer mining location, called the 'Barney Google' placer mining claim. * * * " Had the appellants entered upon said claims with force and arms, no one would, we think, contend that they could acquire any rights in or to the mineral lands as against another in actual possession thereof and working the ground under an attempted location. What one may not do by force he likewise may not accomplish surreptitiously or by stealth. That such is the law applicable to the location of mining claims is too well settled to require the citation of authorities. In view of all the facts and circumstances of this case, we are of the opinion, therefore, that the provisions of section 2332 should be held to apply. If it be held that the provisions of that section have no application and cannot be relied on by respondent, then the effect of that section must necessarily be greatly restricted. If it cannot aid one who has attempted to make a valid location and who has complied with all the mining laws in every respect except one, then that section does not, as has generally been supposed, supply omissions by creating a presumption that a proper location has been made as required by law.

The most recent case in which the provisions of section 2332 were held applicable to an invalid location of a mining

claim is that of *Newport Mining Co.* v. *Bead Lake G. C. M. Co.* (1920) 110 Wash. 120, 188 P. 27. In the course of the opinion the court said:

"The respondent's relocation notice being invalid, it can only prevail by reason of the fact that it has held adverse possession of the property in dispute for more than the statutory period of limitations and has performed the required annual labor. The rule supported by the authorities is that, where a person has held and worked a mining claim for a period equal to the time prescribed by the statute of limitations for mining claims of the state where the same is situated, he has a right equivalent to that of a valid location. Lindley, Mines (3d Ed.) § 688; *Altoona Quicksilver Min. Co.* v. *Integral Quicksilver Min. Co.*, 114 Cal. 100, 45 P. 1047; *Lavagnino* v. *Uhlig*, 26 Utah, 1, 71 P. 1046, 99 Am. St. [Rep.] 808. The question then arises whether the facts bring the respondent within this rule. The trial court found that each year since the location under which the respondent claims the laws of the United States and the state of Washington have been complied with by 'performing all the assessment work and labor on said mining claims required by said laws.' It is further found, 'that the plaintiff and its grantors have had continuous, uninterrupted, and notorious adverse possession of and to all the ground embraced in the Snowbird Lode Mineral Claim for eleven years last past and are now in possession of said lands and are entitled to the possession thereof.'"

The Supreme Court of Idaho, in *Humphreys* v. *Idaho Gold Mines, etc., Co.,* 21 Idaho, 126, 120 P. 823, 40 L. R. A. (N. S.) 817, lays down practically the same rule. The gist of the decision in the Idaho case is stated in the fourth headnote, in the following words:

"Under the provisions of section 2332 of the Revised Statutes of the United States, the claimant to mineral lands of the United States who has been in the open, exclusive adverse possession of a claim for a continuous period equal to that required by the local statute of limitations governing adverse possession of real estate, is relieved of the necessity of making proof of posting and recording a notice of location and such other proofs as are usually furnished by the county recorder; or, in other words, he is relieved of furnishing the evidence of record title."

While it may be contended that in what is said in the fifth headnote, following the one above quoted, a different rule

is asserted, yet it is manifest that what is said in the fifth headnote merely applies to what is necessary before a location is valid. See, also, *Upton* v. *Santa Rita M. Co.*, 14 N. M. 96, 89 P. 275. The question is also fully discussed by the author in 3 Lindley on Mines (3d Ed.) § 688. It is true that there is some language used in the course of the opinion in *Cole* v. *Ralph,* supra, which if taken literally and construed independently from anything else that is said in the opinion, might raise some doubt. The questions involved and decided in that case, however, were different from the question raised in the case at bar. In view, therefore, of the questions that were presented and decided in that case, and considering the opinion as a whole, we have arrived at the conclusion that that case does not essentially conflict with anything that is held in the Washington case to which reference has been made. In view of the facts and circumstances of this case, therefore, when considered as a whole, and in view of the remedial purpose of section 2332, supra, we think that the provisions of that section should be held to apply with full force to a case like the one at bar. At all events, in view that the appellants have recourse to the Supreme Court of the United States, which is the final arbiter respecting all questions arising under federal laws relating to the acquisition of mineral lands, and in view that any error upon our part may be readily corrected by that tribunal, we have less hesitancy to affirm the judgment of the trial court. In this connection we feel impelled to add, however, that in view of the facts and circumstances the conclusion of the district court, in our judgment, is clearly right. We cannot conceive of a more flagrant disregard of the rights of one who for nearly a quarter of a century has been in the actual, open, visible, and exclusive possession of mining ground, one who has expended thereon many hundreds of thousands of dollars, one who has in every respect but one complied with the mining laws of both the state in which the mining claims are located and those of the United States, than is made to appear in this case.

Moreover, it is palpably clear that the appellants have not entered upon the mineral lands in question for the purpose of in good faith developing the mineral contained therein, but have done so far the sole purpose of dispossessing the respondent and to compel it to pay tribute to appellants, although it has actually and in good faith made the only use of the mineral rock that can be made of it, and has used the rock to make a safe and permanent roadbed for its line of railroad crossing Great Salt Lake.

As a matter of course, the appellants contend that the purpose they have in view, and the vast expenditure of money made by the respondent, are wholly immaterial to this controversy. While so far as respondent's technical rights in the mineral lands are concerned that may be the proper view to take, yet, when the question of the application of a remedial statute is to be considered, we think all of the facts and circumstances to which reference has been made are material and should be given proper consideration.

In view of what has been said, it follows that the judgment of the district court should be, and it accordingly is, affirmed with costs.

GIDEON, C. J., and CHERRY, THURMAN and STRAUP, JJ., concur.