**UNITED STATES of America, Appellant,**

v.

**Richard P. HASKINS, Appellee.**

No. 72-2342.

United States Court of Appeals, Ninth Circuit.

Oct. 25, 1974.

---

Jacques B. Gelin (argued), Appellate Section, U. S. Dept. of Justice, Washington, D. C., for appellant.

Hale C. Tognoni (argued), Phoenix, Ariz., for appellee.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and THOMPSON,* District Judge.

### OPINION

BRUCE R. THOMPSON, District Judge.

This is an action in ejectment brought by the United States to enforce its right to possession of an area in the Angeles

---

\* Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

National Forest near Los Angeles, California, described as Section 28, T. 3 N., R. 14 W., San Bernardino B & M.

The Complaint alleges that defendant, Richard P. Haskins, claims the right to possess the property by virtue of four invalidated mining claims denominated as Lone Jack, Lap Wing, Roger Williams and Lady Helen, and two invalidated millsites called Lap Wing Millsite and Lady Helen Millsite. The claims in question were located as lode mining claims and encompass approximately 85.-1 acres. The Complaint alleges that after appropriate administrative proceedings, the claims in question were declared null and void by final decision of the Interior Board of Land Appeals on July 30, 1971.

Defendant Haskins answered. He denied that his possessory interest in the property was based upon the four lode mining claims and two millsites. He admitted that the claims and millsites had been declared null and void by the Interior Board of Land Appeals. He denied that that decision was final and binding, stating that a reasonable time had not elapsed in which to obtain judicial review of the decision.

Defendant also filed a counterclaim in which he makes it clear that his present claim to the possession of the property must be determined on the basis of his assertion of valid placer mining claim locations of the same property which had been encompassed by the lode mining claim locations and millsites. He alleged that his patent application to obtain a patent to the Haskins Quarries Placer Mining Claim was filed on May 27, 1968, and that the processing of that application had been frustrated by the decision of the Bureau of Land Management that the then pending litigation before the Interior Board of Land Appeals, in effect, involved the same property.

The plaintiff moved for summary judgment. In opposition to the motion, defendant filed, among other things, an affidavit of E. Rowland Tragitt, a graduate of the Missouri School of Mines and Metallurgy in 1923 and a registered professional engineer in Missouri and Arizona. In addition to sixteen years of experience working for mining companies, Mr. Tragitt was employed by the Bureau of Land Management as a Field Examiner and later Supervising Engineer and Lands and Minerals Officer from 1939 until 1957. From 1957 until 1968, Mr. Tragitt was Chief Mining Engineer for Region 3 of the Forest Service, United States Department of Agriculture, Albuquerque, New Mexico. The affidavit states that in March of 1972, he made a thorough examination of the Haskins Quarries Placer Mining Claim and determined that there is a minimum of 900,000 tons of dolomite on the claims and that the use of dolomite in the Los Angeles area included the following: Flux in iron and steel foundries, filler in paints, asphalt and rubber, the manufacture of glass, paper, refractories, insulation and fertilizer, and as a supplement in animal feed. Mr. Tragitt also stated: "That in addition to the dolomite, there are a minimum of 100,000 tons of decorative stone marketable for use as roofing granules, terrazzo chips, and decorative stone in walls, rock gardens, fire places, and patios."

The District Court heard the motion for summary judgment and filed a memorandum opinion denying the motion. The following quotation summarizes the basis for the decision:

"In moving for a summary judgment of dismissal of defendant's counterclaim, the Government urges that since the land embraced within the lode claims was held to be without commercial value in the contest proceedings, the issue is res adjudicata in the patent application proceedings relating to the placer claim. But this is not necessarily so. There is after all a difference between a lode claim and a placer claim. The former relates to a vein of quartz or other rock in place, whereas a placer claim covers all forms of deposit except a vein of quartz or other rock in place, and what might be an insufficient show-

ing of commercial value in support of a lode claim might well be sufficient to establish a valid placer mining claim. Both types of claims can, of course, be made upon the same property and can co-exist, even though in different ownership."

The Court determined that the application for patent to the placer claims should be remanded to the Department of the Interior for administrative determination. The Court also certified the case as one appropriate for interlocutory appeal under 28 U.S.C. § 1292(b), and the appeal was accepted by this Court. The District Court stated the following as the controlling questions of law involved in its decision:

"1. Can the defendant pursue his application for patent of the Haskins' Placer Mining Claim pursuant to Title 30 U.S.C. § 38 where his lode claims under which he had previously worked the property have been declared invalid for lack of discovery?

"2. Does defendant's possession of the property which antedates the effective date of the Watershed Withdrawal Act of 1928 by more than five years, entitle him to proceed with his patent application notwithstanding the fact that his notice of intention to hold as a placer mining claim was not filed until subsequent to the effective date of the Watershed Withdrawal Act?

"3. If the defendant is entitled to proceed with his patent application and since the Government has chosen this Court as a forum, does this Court have jurisdiction over the patent application proceeding to the extent that it may make an order declaring the defendant entitled to a patent, or should these proceedings be remanded to the Department of the Interior to process defendant's application administratively?"

The instant controversy has a long history. The Haskins family has occupied this land within Angeles National Forest since the turn of the century.

Between 1894 and 1908, Haskins' mother located lode mining claims for gold, silver, vanadium and uranium. In 1929, she filed a patent application for the lode claims known as Lone Jack, Lap Wing and for the Lap Wing Millsite. The Forest Service filed a protest. In the meantime, on May 29, 1928, Congress had enacted 45 Stat. 956 which withdrew these lands, among others, within Angeles National Forest from location and entry under the mining laws. The Withdrawal Act declared that it would not defeat or affect any lawful right which had already attached under the mining laws. Mrs. Haskins' patent applications were processed between 1929 and 1936 and the final decision was that the applications were rejected. In the course of these proceedings, a Forest Service Minerals Examiner had rendered a report in which he observed that the Lady Helen Claim, lying west of the Lone Jack, was "unquestionably patentable." It should be noted that in the administrative hearings in the 1930's, testimony was received from Mrs. Haskins and Bartholomew J. Haskins, who were then living, and that the proceedings resulted in the rejection of patents for the Lone Jack and Lap Wing claims.

The Haskins remained in possession.

In about June of 1962, Richard P. Haskins filed a verified statement specifying the exact nature of his mining claims. He claimed the four lode mining claims known as Lone Jack, Lap Wing, Roger Williams and Lady Helen and the Lap Wing Millsite and Lady Helen Millsite. In 1964, the Government initiated contest proceedings against these claims. In the administrative hearings, Haskins testified that while his predecessors had originally been looking for gold and silver, he was now interested only in dolomite. The decision of the Examiner was to the effect that there is not now a valuable mineral deposit on any of the four lode claims and that the two millsites are not being used for mining or milling processes. He declared the lode claims null and void for lack of a presently valuable mineral

deposit and the millsites null and void for lack of use. This is the decision which became final on July 30, 1971 by virtue of the decision of the Interior Board of Land Appeals.

In the meantime, Haskins had filed an application for patent to the ground in question as the "Haskins Quarries Mining Claim" under 30 U.S.C. § 38 (based on adverse possession under state law), and under 30 U.S.C. § 161 authorizing entry on lands chiefly valuable for building stone under the provisions of the law in relation to placer mineral claims.

The record before the Court shows that limestone is calcium carbonate and dolomite is a combination of calcium carbonate and magnesium carbonate. A 1937 report of the California State Minerologist shows that the Haskins dolomite deposit consists of a series of lenses of dolomite in the gneissoid granite from thirty to forty feet thick and from one hundred to two hundred feet in length. An analysis of one sample showed approximately 36% magnesium carbonate and 58% calcium carbonate and of another approximately 12% magnesium carbonate and 87% calcium carbonate.

## 1. APPLICABILITY OF 30 U.S.C. § 38.

■ Section 38, Title 30, United States Code, provides as follows:

"Where such person or association, they and their grantors, have held and worked their claims for a period equal to the time prescribed by the statute of limitations for mining claims of the State or Territory where the same may be situated, evidence of such possession and working of the claims for such period shall be sufficient to establish a right to a patent thereto under this chapter  *  *  *."

This savings clause has been part of the general mining law since 1870 (16 Stat. 217). Its purpose is to obviate the necessity of proving formal compliance with requirements for locating a claim but not to dispense with proof of discovery. Cole v. Ralph, 252 U.S. 286, 40 S. Ct. 321, 64 L.Ed. 567 (1920).

■ We agree with the district court that the section is applicable to this case. The evidence unequivocally shows that Haskins and predecessors have been in possession of the ground and have worked the claims for over half a century and for much longer than five years prior to the enactment of the Watershed Withdrawal Act of May 29, 1928. Section 38 permits them to assert valid placer locations for the ground in question without proof of posting, recording notices of location and the like. Springer v. Southern Pac. Co., 67 Utah 590, 248 P. 819 (Utah 1926); Newport Mining Co. v. Bead Lake G. C. M. Co., 110 Wash. 120, 188 P. 27 (Wash.1920); Humphreys v. Idaho Gold Mines, etc. Co., 21 Idaho 126, 120 P. 823 (Ida.1912).

■ The Government criticizes these authorities because they involved a contest between private adverse claimants and contends that the statute does not apply against the United States, pointing to *dicta* in United States v. Consolidated Mines & Smelting Co., Inc., 455 F.2d 432 (9th Cir. 1971). We think, however, that the Supreme Court, in Cole v. Ralph, *supra,* has made it plain that the statute was intended to apply in claims for patent against the United States, saying:

"The only real divergence of opinion respecting the section has been as to whether it is available in an adverse suit, such as these are, or is addressed merely to the land department. Some of the courts have held it available only in proceedings in the department, McCowan v. Maclay, 16 Mont. 234, [40 Pac. 602] and others in greater number have held it available in adverse suits. Upton v. Santa Rita Mining Co., [14 N.M. 96, 89 Pac. 275] supra, and cases cited. The latter view has received the approval of this court. Reavis v. Fianza, [215 U.S. 16, 30 S. Ct. 1, 54 L.Ed. 72] supra; Belk v. Meagher, [104 U.S. 279, 26 L.Ed. 735] supra."

■ ■ Haskins having occupied and worked the ground for more than five years may assert placer locations without proof of recording and posting. He must, nevertheless, prove discovery of a valuable mineral because the statute has no application to a trespasser on public lands, title to which cannot be acquired by entry under the mining laws of the United States. Cole v. Ralph, *supra*; Chanslor-Canfield Midway Oil Co. v. United States, 266 F. 145 (9th Cir. 1920).

## 2. THE ISSUE REGARDING THE PRESENCE OF DOLOMITE OR DOLOMITE LIMESTONE IN LODE FORMATION IS RES JUDICATA.

The validity of Haskins' lode claims, encompassing the present placer claims, was tried in the Department of the Interior on the question of whether there was a discovery of valuable mineral on the property, namely, dolomite or dolomite limestone. The Department found "that there is not now a valuable mineral deposit on any of the four lode claims, and that the two millsites are not being used for mining or milling purposes." This finding is final and binding.

■ It is true that a placer discovery will not sustain a lode location, nor a lode discovery a placer location. Cole v. Ralph, *supra*, 252 U.S. at 295, 40 S.Ct. 321. We have quoted, *supra*, the observations of the District Court on this subject.

The issue of lode versus placer locations presents many practical difficulties. A lode claim is located on a vein of quartz or rock in place (30 U.S.C. § 23). All other forms of mineral deposits are locatable as placer claims (30 U. S.C. § 35). By express statute, lands chiefly valuable for building stone may be claimed as placer deposits (30 U.S.C. § 161). In 1969, the Court of Appeals of Arizona wrote instructively about the differences between lode and placer locations, Bowen v. Sil-Flo Corporation, 9 Ariz.App. 268, 451 P.2d 626 (1969), and held perlite to be properly claimed as a lode deposit. The Court quoted from Iron Silver Mining Co. v. Cheesman, 116 U.S. 529, 6 S.Ct. 481, 29 L.Ed. 712 (1886): "We are of opinion therefore, that the term (lode) as used in the acts of congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from neighboring rock." The Interior Department has held that limestone deposited in lode formation is properly claimable as a lode claim and not as a placer claim. Big Pine Mining Corporation, 53 L.D. 410 (1931). That seems to be true of the dolomite and dolomite limestone deposits in the present case.

■ In any event, it is clear that the Haskins lode claims were not declared invalid by the Department because they should have been located as placers. If they had been, this case would be different. On the contrary, the Department accepted the lode locations and proceeded to investigate the quality of the deposit, ultimately holding the claim invalid for lack of discovery of a valuable mineral.

Haskins now attempts to claim at least some of the same mineral on the same ground as a placer deposit. It may be that some of the dolomite is not in lode formation. To the extent that it is deposited as a zone or belt of mineralized rock lying within boundaries separating it from neighboring rock, Haskins cannot twice litigate the issue of the existence of this valuable mineral in the ground. He is precluded by the doctrine of res judicata. Consequently, whatever the merits of Haskins' claimed placer locations, their validity cannot be supported by proof of the presence of dolomite or dolomite limestone in lode formation. Haskins cannot use the same material that he relied on as discovery of valuable mineral under his lode locations to support his present placer applications.

## 3. THE ISSUE WITH RESPECT TO BUILDING STONE.

■ Haskins also asserts the validity of his placer claims as building stone locations under 30 U.S.C. § 161. The affi-

davit of E. Rowland Tragitt avers the presence on the property, in addition to the dolomite, of 100,000 tons of decorative stone marketable for use as roofing granules, terrazzo chips and decorative stone for walls, rock gardens, fireplaces and patios. Our search of the record has disclosed no instance in which the validity of mining locations for this mineral on the ground in question has been decided, or even placed in issue. Further, it cannot be determined from the present record whether the placer location for building stone was thrown in as an afterthought and not in good faith. The difficulties inherent in proving up on a placer location for building stone are apparent to anyone familiar with the mining laws. Cf. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); McClarty v. Secretary of Interior, 408 F.2d 907 (9th Cir. 1969); Brubaker v. Morton, 500 F.2d 200 (9th Cir. 1974). Nevertheless, in the language of the District Court, the "claimant is entitled to try."

### 4. IS THE JULY 30, 1971 DECISION OF THE INTERIOR BOARD OF LAND APPEALS FINAL?

We have noted that Haskins, in his answer, alleged that the Interior Department decision holding the lode claims invalid was not final because a reasonable time to seek review under the Administrative Procedures Act had not elapsed. Not so. The reasonable time elapsed when the answer was filed. The complaint for ejectment directly alleged the Interior Department decision as the basis for ejectment. If Haskins intended to assert the invalidity of that decision, that was the time to do it. A counterclaim for review and relief from the decision was a compulsory counterclaim under Rule 13(a), Federal Rules of Civil Procedure. Instead, Haskins elected to rely on a new claim of placer locations which had not previously been adjudicated.

### 5. THE ISSUE OF GOOD FAITH.

Our Court has affirmed that for a mining location to be valid, the entry must have been made in good faith for the purposes of mining valuable minerals. United States v. Nogueira, 403 F.2d 816 (9th Cir. 1968). The thorough opinion in the Nogueira case establishes this requirement beyond dispute. Nogueira, like the instant case, was an action for ejectment brought by the United States in which the locator relied on a subsequent placer location after his lode claim had been held invalid. While not couched explicitly in terms of "good faith," the Government here has consistently argued that Haskins cannot "circumvent" the final decision disqualifying the lode claims by now asserting valid placer claims. This amounts to the same thing. In Nogueira, the Court said:

"In this case there was ample evidence from which the trier of fact could have determined that the purported location in May 1961 was not for the purpose of exploring for and developing minerals; and ample evidence that the appellees entered upon and continued to occupy the premises for personal residence purposes and not for mining development at all.

"In spite of our refusal to pass on the government's first contention, we think the district court had jurisdiction to pass on the good faith or lack of good faith in the filing of a mining claim without necessarily passing on its validity otherwise, under the mining statutes. We are led to this conclusion by the delays and confusion which would follow, if as soon as one mining claim were held invalid, another was filed. If in each instance the government would have to await the determination of the validity of the mining claim to be made by the Department of the Interior, the government could thus be forever kept out of possession of its property." United States v. Nogueira, supra, at 824.

In this case, in view of the long history of mining activity on the property and the affidavit of E. Rowland Tragitt, the least that can be said is that there is a disputed issue of material fact which precludes summary judgment.

6. DISPOSITION BY REMAND TO THE DEPARTMENT OF THE INTERIOR.

■ The District Court referred the placer patent application to the Department of the Interior for administrative processing. Here, too, the *Nogueira* opinion is illuminating. While that Court declined to pass on the specific issue of the jurisdiction of the District Court on suit by the United States to determine the validity of a mining claim in the first instance on the question of discovery of a valuable mineral, our reading of the discussion in that opinion persuades us that reference of the question to the Department of the Interior is the proper course. Here the patent application for placer claims is presently pending in the Department and the question is presented by Haskins' counterclaim, not the Government's complaint. In *Nogueira*, the Court said:

"The express holding in Best, shown supra, does not support appellees' contentions. We draw from the cases above including Best, the conclusion that while a proceeding on a claim is pending before the Department of the Interior, the courts will not entertain actions by private litigants seeking to restrain the Department, compel its decision or interfere with the administrative processes; that the authorities *do not hold* that the government has no right to enter the United States courts, set up particularly for the handling of government cases, and seek to vindicate its rights to title, its rights to possession or damages for waste or trespass upon land, the title of which is in the government." United States v. Nogueira, *supra*, at 822–823.

When the issue is one of discovery of a valuable mineral, and not, as in *Nogueira*, of good faith or the non-mining use to which the property is being put, the expertise of the Department in the premises is appropriately invoked. Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963).

7. ANSWERS TO CONTROLLING QUESTIONS OF LAW CERTIFIED BY THE DISTRICT COURT.

(a) Haskins may pursue his application for patent of the Haskins' Placer Mining Claim pursuant to 30 U.S.C. § 38, but may not base his claim of discovery of a valuable mineral upon the presence of dolomite or dolomite limestone in lode formation.

(b) The notice of intention to hold the placer claims recorded in 1968 does not preclude Haskins from asserting the validity of the claims based on actual possession and working of the claims for more than five years prior to the Watershed Withdrawal Act of 1928, proof of posting and recording notices of placer locations at or about the date of occupancy being obviated by 30 U.S.C. § 38.

(c) The placer patent application was properly referred to the Department of the Interior for administrative processing.

The order of the District Court is affirmed and the case is remanded for further proceedings consistent with this Opinion.